Filed 12/19/13  P. v. Lewis CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056993 |
| v. | (Super.Ct.No. RIF1102889) |
| PAUL DIXON LEWIS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Christian F. Thierbach, Judge.  Affirmed with directions.

Mary Woodward Wells, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant Paul Dixon Lewis of possession of a controlled substance within a penal institution (count 1 – Pen. Code, § 4573.6)[1] and possession of marijuana for sale (count 2 – Health & Saf. Code, § 11359). After a bifurcated proceeding thereafter, the court found true allegations defendant had suffered eight prior strike convictions (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)) and a prison prior (§ 667.5, subd. (b)). The court sentenced defendant to a determinate term of one year followed by an indeterminate term of 25 years to life.

On appeal, defendant contends substantial evidence fails to support his conviction for possession of marijuana for sale, specifically with respect to his intent to sell; the court erred in declining to grant his *Romero*[2] motion to strike seven of his eight prior strike convictions; the court erred in imposing a restitution fine of $5,000; and the abstract of judgment and sentencing minute order must be corrected to accurately reflect the court's imposition of sentence and that trial was by jury and not by the court. The People agree the abstract of judgment and sentencing minute order must be corrected. We agree with the People and shall order the superior court to correct the abstract of judgment and sentencing minute order. In all other respects, the judgment is affirmed.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

FACTS

Correctional officer Timothy Schmid of the California Rehabilitation Center in Norco, California, was on duty on May 16, 2011, as the disciplinary officer. He entered one of the prisoner's dorms and heard an "unidentified inmate call out 'walking,' which is common practice for inmates to alert other inmates that an officer is in the dorm so they can let them know something is going on." Schmid smelled the odor of marijuana. He called in the assigned dorm officer and they walked through the dorm together. "I was able to smell a very strong odor of marijuana coming from a particular bed area."

Schmid ordered all the inmates in that particular bed area to step out. He and the dorm officer searched those inmates. One of the individuals he searched was defendant; "When I was searching his buttocks and crotch area, I was able to detect a foreign object inside his clothing." They handcuffed defendant and brought him into a separate area to conduct an unclothed body search.

Schmid found 25 bindles of marijuana enclosed in a latex glove secreted in the fly of defendant's underwear.[3] Inmates typically use the fingers of latex gloves to package various drugs individually. The total weight of all the bindles was 13.2 grams. He conducted a field test of the marijuana which resulted in a presumptive positive result. Schmid also took a urine sample from defendant and sent it to the lab for testing.

---

[3] Schmid testified that multiple, prepackaged drugs is an indicator the drugs are possessed for sales, although he did not find any pay-owe sheets, cash, cell phones, Western Union receipts, or a list of addresses.

Criminalist Casey Hughes tested one of the 25 bindles, which tested positive for marijuana. The bindle weighed 0.5 net grams. A packet of sugar weighs about a gram.

Toxicologist Thomas Sneath's lab was contracted with the prison to conduct urinalysis testing on inmates. Defendant tested negatively for THC, the active ingredient in marijuana. A urine test can typically detect marijuana within a user's system within one to two hours of ingestion. A single use would stay in a person's system for three to four days; however, the detectable amount of THC in a daily user's urine could stay in the individual's system for up to eight weeks.

Miguel Vega, a correctional officer assigned to the Investigators Services Unit at Norco, in which he spends most of his time investigating narcotic transactions, testified, "[m]ost commonly, once marijuana has been introduced into the prison, it's generally repackaged into smaller increments for the purpose of sales. . . . Generally what happens is, [] a large amount is broken down into smaller increments. Typically, it's [going] [to] be cellophane. Latex is generally used as a packaging agent, and they're made into smaller bindles."

Since cash is contraband within the prison, most payments for narcotic transactions are made through electronic money transfers such as Western Union, MoneyGram, or postal money orders. Officers often find pay-owe sheets, though "[s]ome people prefer not to because they know that most correctional officers are looking for that type of evidence when they find narcotics in the area, so they tend not to keep it." Drugs are typically broken down into one dose, which can be one gram,

0.5 gram, or even less. One gram is typically worth $200. Violence occurs with respect to drug transactions when the purchaser fails to pay.

Vega opined, "[b]ased on the way it's packaged right here, I would say it's a good indication that it's trafficking." The fact that no pay-owe sheets were found would not change his opinion as to whether the marijuana was packaged for sale. The fact that defendant tested negatively would support a conclusion he was selling and not using: "It's been my experience that that's not uncommon . . . where a person that's involved in selling a controlled substance . . . does not . . . use that product; they just simply traffic it. It would not have an impact on my decision."

DISCUSSION

A. Sufficiency of the Evidence of Intent to Sell.

Defendant contends the evidence was insufficient to support his conviction of possession of marijuana for sale, specifically with respect to his intent to sell. We disagree.

"'The standard of appellate review for determining the sufficiency of the evidence is settled. On appeal, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" [Citation.] In conducting such a review, we "'presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" [Citations.] "Conflicts

5

and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." [Citation.]'" (*People v. Harris* (2013) 57 Cal.4th 804, 849.)

"'Unlawful possession of a controlled substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character. [Citation.]' [Citations.] Intent to sell may be established by circumstantial evidence. [Citation.]" (*People v. Harris* (2000) 83 Cal.App.4th 371, 374.) "'In cases involving possession of marijuana . . . experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld. [Citations.]' [Citation.] Thereafter, it is for the jury to credit such opinion or reject it." (*Id.* at 374-375.) Factors supporting intent to sell may also include the quantity of the substance, its packaging, and the number of packages found. (*People v. Dowl* (2013) 57 Cal.4th 1079, 1089-1090.)

Here, Schmid found 25 bindles of marijuana enclosed in a latex glove hidden in defendant's underwear. The total weight of all the bindles was 13.2 grams. He testified inmates typically use the fingers of latex gloves to package various drugs individually.

6

Such prepackaging is an indicator the drugs are possessed for sale. Vega testified marijuana is generally repackaged into smaller, one dose increments or bindles of 0.5 gram to one gram in prison for the purpose of sales. Latex is generally used as a packaging agent. One gram is typically worth $200 in prison. Vega opined the manner in which the marijuana was packaged in this case was a good indication defendant possessed the drugs for sales. Thus, substantial evidence supported the jury's inherent finding defendant possessed the marijuana with an intent to sell.

B. *Romero* Motion.

Defendant contends the court failed to exercise its discretion in declining to strike seven of his eight prior strike convictions because it did not consider defendant's background, character, or prospects. We disagree.

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) Under this standard, the defendant bears the burden of establishing an abuse of discretion. In the absence of such a showing, the trial court is presumed to have acted correctly. The appellate court may not substitute its judgment for that of the trial court when determining whether the trial court's decision to strike the prior was proper. (*Id.* at pp. 376-377.) "'[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to . . . section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the

7

nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*Id*. at p. 377.) "'[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (*Id*. at p. 378.)

Here, the court indicated it had read the probation officer's report. The probation officer's report contains a recount of defendant's extensive and long-standing criminal history, including true findings on felony juvenile allegations in 1983 of robbery, attempted robbery, and possession of a sawed-off shotgun; conviction for misdemeanor taking of a vehicle in 1985; conviction for two counts of felony receiving stolen property in 1986; convictions for misdemeanor battery on a police officer and second degree burglary later in 1986; and convictions for felony rape, forcible rape while acting in concert with another, assault by means likely to cause great bodily injury, kidnapping, false imprisonment, and oral copulation by acting in concert with force in 1991. During defendant's prior stint in prison, defendant had been granted parole and had that parole revoked on three occasions. Defendant committed the instant offenses while serving a 49-year prison sentence for his last convictions.

8

Defendant's most recent convictions involved what the probation officer described as a "horrendous sex crime." Indeed, defendant's immediate prior convictions resulted from a situation in which he, with the help of another adult, hit a 15-year-old girl, drove her to a remote location, raped her, drove to his apartment, threatened to kill her, raped her again, threatened to bomb her residence if anyone reported the incident to the police, and dropped her off at the mall the next day. The court responded to defendant's second *Romero* motion[4] by stating "I can't fathom how anyone could, with any degree of intellectual honesty, conclude that [] [defendant] falls outside the spirit of the three-strikes law . . . ." "I think this is the kind of conduct that the authors of the three-strikes initiative, as well as the legislators who passed the corresponding legislative version, had in mind when that law was drafted and ultimately passed." "I do not conclude that [] [defendant] falls outside the spirit of three strikes, either in whole or in part." The court acted within due exercise of its discretion in denying defendant's second *Romero* motion.[5]

Defendant's reliance on *People v. Bishop* (1997) 56 Cal.App.4th 1245, 1248 (*Bishop*) is misplaced. First, the *Bishop* court, in deferentially reviewing the trial court's act of *striking two* of the defendant's prior strike convictions, upheld that exercise of

---

[4] Defendant filed a pretrial *Romero* motion that was denied without prejudice.

[5] "It is presumed that the trial court considered all relevant factors in denying [a] [*Romero*] motion to strike. [Citation.] Based on the record presented, [defendant] makes no showing that the trial court acted arbitrarily or abused its discretion. [Citation.]" (*People v. Pearson* (2008) 165 Cal.App.4th 740, 749.)

discretion. Here, we deferentially review the court's *denial* of defendant's motions to strike seven of eight of his prior strike convictions. As discussed above, the court considered the proper criteria in ruling on defendant's motions, and we may not substitute our own judgment. (*Id.* at pp. 1250-1251; *People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) Second, *Bishop* predates *People v. Williams* (1998) 17 Cal.4th 148, and consequently did not apply the appropriate standard: whether the defendant should be deemed to fall outside the scheme's spirit. "[T]he overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike of those defendants with a long and continuous criminal career. [Citations.]" (*People v. Strong* (2001) 87 Cal.App.4th 328, 338-339.)

C. Restitution Fine.

Defendant contends the trial court failed to exercise its discretion by ordering he pay a $5,000 restitution fine. We hold defendant forfeited the issue by failing to object below. In any event, we hold the court acted within its discretion in ordering the restitution fine in the amount it did.

At the time defendant committed the offenses for which he was convicted, section 1202.4, subdivision (b) read, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred

10

dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony . . . ." (Former § 1202.4, subd. (b)(1).) "In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (Former § 1202.4, subd. (b)(2).)

"The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the two hundred-dollar ($200) or one hundred-dollar ($100) minimum." (Former § 1202.4, subd. (c).) We review a trial court's imposition of a restitution fine under section 1202.4 for abuse of discretion. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1321 [Imposition of $10,000 maximum restitution fine not an abuse of discretion.].)

Defendant failed to object to the imposition of the fine or its amount below. "[W]e conclude that a defendant who fails to contest the booking fee when the court imposes it forfeits the right to challenge it on appeal." (*People v. McCullough* (2013) 56 Cal.4th 589, 591.) Defendant cites *People v. Pacheco* (2010) 187 Cal.App.4th 1392 (*Pacheco*), in support of his argument the issue was not forfeited for failure to object; however, the California Supreme Court expressly disapproved of *Pacheco* in *People v.*

11

*McCullough, supra*, 56 Cal.4th 589, 599, after he filed his opening brief.  Thus, defendant forfeited the issue on appeal.

Regardless, we hold the court acted in cognizance of its discretion to impose a restitution fee in a lesser amount.  The probation officer recommended imposition of a restitution fine in the amount of $480.  The court responded "I don't know where they came up with that – – he is to pay a restitution fine in the amount of $5,000 pursuant to Section 1202.4 of the Penal Code."  The court ordered defendant pay a restitution fine in the exact amount reflected by the formula permissibly prescribed by former section 1202.4, subdivision (b)(2).  The court crossed out the $480 recommendation in the probation officer's report and wrote in the $5,000 amount it ordered.  The court acted within its recognized discretion.

Defendant maintains the court failed to act in recognition of its discretion to order as little as $200 for the restitution fine because it found defendant unable to pay the "court security fine or the criminal conviction assessments, or the criminal lab fee, or the drug program fee."  However, although the court is required to strike the last two of the aforementioned fees when it finds the defendant unable to pay, the same rule did not apply to the restitution fine.  (Former § 1202.4, subd. (c).)  Although the court *may* have reduced defendant's restitution fine due to his inability to pay, it was not required to do so.  The court's rejection of the probation officer's recommendation of a $480 restitution fine was indicative of its cognizance of its discretion to order a lesser amount than it did.  The court acted within its discretion.

D. Abstract of Judgment and Sentencing Minute Order Errors.

Defendant observes that although the court found defendant unable to pay the security fine, criminal conviction assessment, criminal lab fee, or drug program fee, the sentencing minute order reflects the court struck all these fees and the abstract of judgment indicates defendant's obligation to pay the latter two fees. Since the former two assessments are mandatory, the People contend the minute order must be corrected to reflect imposition of these fees. The People agree the abstract of judgment must be corrected to reflect the striking of the latter two fines. Defendant additionally notes that although he was tried by a jury, the abstract of judgment reflects he was convicted by court trial. We shall order the superior court to correct these errors.

"It is well settled that '[a]n abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize. [Citation.]' [Citation.] When an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, this court has the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties. [Citation.]" (*People v. Jones* (2012) 54 Cal.4th 1, 89; *People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14.)

"[I]t is well established that the appellate court can correct a legal error resulting in an unauthorized sentence . . . at any time. [Citation.]" (*People v. Sanders* (2012) 55 Cal.4th 731, 743, fn. 13.) The court facilities assessment and criminal conviction fee

are mandatory and are not affected by a court's finding of a defendant's inability to pay. (Govt. Code, § 70373; § 1465.8; *People v. Woods* (2010) 191 Cal.App.4th 269, 272-273.)

Here, the court incorrectly struck the mandatory court security fee and criminal conviction assessment. Thus, we will order the superior court to correct the sentencing minute order dated August 17, 2012, to reflect imposition of those fees.[6] The abstract of judgment incorrectly reflects imposition of the criminal lab and drug program fee, although the court found defendant unable to pay those fees. Thus, we shall direct the superior court to correct the abstract of judgment to so indicate. Finally, the abstract of judgment incorrectly reflects defendant was found guilty pursuant to a court trial. We will order the superior court to correct the abstract of judgment additionally to indicate defendant's trial was by jury.

## DISPOSITION

The superior court is directed to modify defendant's sentencing minute order dated August 17, 2012, to reflect imposition of the $80 court security fee and $60 criminal conviction assessment. The superior court is additionally directed to correct defendant's abstract of judgment to remove imposition of the $50 lab fee and $100 drug program fee. Furthermore, the superior court is directed to correct the abstract of judgment to reflect defendant's conviction was by jury trial. The modified and

---

[6] The abstract of judgment correctly reflects imposition of the fees.

14

corrected abstract of judgment and minute order shall be forwarded to the Department of

Corrections and Rehabilitation.  In all other respects, the judgments are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


RICHLI
J.


CODRINGTON
J.