[No. B198805. Second Dist., Div. Six. July 30, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE CHARLES PEARSON, Defendant and Appellant.

---

**COUNSEL**

Gary C. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Michael A. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**YEGAN, Acting P. J.**— ██ "No one can take advantage of his own wrong." (Civ. Code, § 3517.) This equitable maxim surely applies where a party intentionally interferes with the truth-seeking function of the court. Here defendant concealed the victim-witness and obtained a partial acquittal. When he produced the same victim-witness for his own purposes on other counts, the trial court vacated the partial acquittal. In these circumstances defendant is estopped from seeking refuge under the jeopardy umbrella. "Our courts are not gambling halls but forums for the discovery of truth." (*People v. St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390]; see also *People v. Zack* (1986) 184 Cal.App.3d 409, 415 [229 Cal.Rptr. 317].)

Lawrence Charles Pearson appeals from the judgment entered after a jury convicted him of corporal injury of a cohabitant (Pen. Code, § 273.5, subd. (a); count 1)[1] and assault with a deadly weapon (§ 245, subd. (a)(1); count 2), with special findings that he used a deadly weapon (a knife) to inflict corporal injury on the victim (§ 12022, subd. (b)(1)). Appellant admitted suffering three prior strike convictions (§§ 667, subds. (b)–(d), 1170.12, subds. (a)–(d)) and was sentenced to 31 years to life in state prison. We affirm.

---

[1] All statutory references are to the Penal Code.

## *Facts and Procedural History*

On June 2, 2006, appellant "flagged down" his ex-girlfriend, Latonya Samuels, in front of an elementary school as Samuels picked up her six-year-old son, C. Appellant asked Samuels to get out of her car and talk. Appellant argued with Samuels, complaining that she had not called him. Samuels tried to leave but appellant put his foot in the driver's door, climbed into the car, and punched Samuels in the face.

C. punched appellant and told him to get off of his mother. Samuels's friend, Tamia Jones, got out of the car and called 911.

Appellant removed a knife from his pocket and attempted to stab Samuels, but lost control of the knife. Samuels picked up the knife and stabbed appellant. C. retrieved the knife and put it in the grass to prevent a further attack.

Responding to the 911 call, Pasadena Police Officer Michael Lewis saw that Samuels had a bump on her right eye socket, a scratch on her collarbone, two finger cuts, and a bruised cheekbone. Samuels told Officer Lewis that appellant jumped in the car, punched her twice in the face, held her down by the throat, and tried to stab her before dropping the knife. Samuels picked up the knife and stabbed appellant to "get him off of her." Later that evening, the police helped Samuels obtain an emergency protective order that was served on appellant. (Counts 1 & 2.)

Samuels also said that appellant was an ex-boyfriend and that she tried to break off the relationship. Appellant, however, wanted to get back together and told Samuels, "If I can't have you, no one will." He called 25 times a day, forcing Samuels to change her phone number a few days before the attack. (Counts 3 & 4.)

Four days after the attack, Samuels told the police she "wanted to leave it alone" and "didn't want any harm to come to her . . . ." She refused to testify at the preliminary hearing and failed to appear at trial after the prosecutor served her with a subpoena. The trial court issued a bench warrant but Samuels could not be found.

At the close of the prosecution's case, appellant moved to dismiss the stalking and criminal threat counts (counts 3 & 4) for lack of evidence.

(§ 1118.1.)[2] The prosecutor conceded that without Samuels's testimony, these counts would be difficult to prove.

After the trial court granted the section 1118.1 motion and took a short recess, defense counsel advised the court that he had "an ethical dilemma" and needed time to reflect on his problem. Following another recess at defense counsel's request, he stated that appellant had been in contact with Samuels, that Samuels wanted to testify as a defense witness, and that counsel telephoned Samuels and confirmed that she could appear in 30 minutes. The prosecution argued that if Samuels "comes in to testify," it would move to reinstate counts 3 and 4. Over appellant's objection, the trial court vacated the section 1118.1 order, reinstated the stalking and criminal threat counts, and granted leave to reopen.

Samuels was a hostile witness. She claimed that the knife was hers and that she stabbed appellant out of anger and jealousy. Samuels said that she "was drunk, high, and just radical" when she talked to the police and denied that appellant hit or assaulted her with a knife. She also denied that appellant had threatened or stalked her.

In rebuttal, Officer Lewis testified that Samuels did not appear to be under the influence of drugs or alcohol when he responded to the 911 call. He did find a baggie of marijuana and a small, unopened bottle of tequila on the ground by the car. Samuels denied ownership of these items.

The jury returned guilty verdicts for corporal injury to a cohabitant and assault with a deadly weapon (counts 1 & 2), and acquitted on the stalking and criminal threat counts (counts 3 & 4).

### Estoppel Based on Appellant's Wrongdoing

We do not reach the merits of appellant's constitutional and statutory jeopardy contention. " 'A party is estopped from asserting error on appeal that was induced by his own conduct.' " (*People v. Delgado* (1973) 32

---

[2] Section 1118.1 provides in relevant part: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."

Section 1118.2 provides: "A judgment of acquittal entered pursuant to the provisions of Section 1118 or 1118.1 shall not be appealable and is a bar to any other prosecution for the same offense."

Cal.App.3d 242, 254 [108 Cal.Rptr. 399].) Here, the trial court found "there is a warrant outstanding for Ms. Samuels [and] . . . there's no prejudice to the defense." Responding to appellant's argument that section 1118.1 orders are final, the trial court said: "There may not be another case where I would think it was appropriate, but if there is such a case this is it."

We agree. A defendant cannot conceal the victim-witness from the prosecution on certain counts, obtain a partial acquittal and then produce the witness to testify as a defense witness on the remaining counts while retaining the benefits of the partial acquittal. Overruling appellant's jeopardy objection, the trial court noted that no other witnesses had testified since its initial ruling. It found that appellant "is in no worse position than [he would have been if] . . . we had the witness here prior to [the initial ruling]. But for the witness [not] being here the People would have been able to go ahead and proceed and have testimony taken that may or may not have related to the stalking and the criminal threats [counts]."

The trial court also found no ethical wrongdoing by defense counsel but found that appellant had Samuels's "telephone number, had been in contact with [Samuels]. He knew that . . . she had said that she would come and testify. [Appellant w]aited to give you that information until after an 1118.1 motion was made."

Defense counsel doubted that appellant was sophisticated enough "to just sit back and withhold a phone number" until the section 1118.1 motion was ruled on. The record, however, paints a different picture. On the first day of trial, appellant complained that the prosecution could not prevail without the victim's testimony and that he had a Sixth Amendment right to confront his accuser. Appellant personally told the trial court: "You [were] here when the victim took the Fifth [at the preliminary hearing] and refused to testify to incriminate herself . . . ."

Here, it is apparent that appellant intentionally interfered with the trial process with this incredibly transparent ploy. By any standard of proof, appellant's conduct was intentional and "*designed* to prevent a witness from testifying. The absence of a forfeiture rule covering this sort of conduct would create an intolerable incentive for defendants to bribe, intimidate, or even kill witnesses against them." (*Giles v. California* (2008) 554 U.S. ___, ___ [171 L.Ed.2d 488, 499, 128 S.Ct. 2678, 2686].)

Two United States Supreme Court cases have spoken to the concept of "forfeiture by wrongdoing" in the confrontation clause context. In *Reynolds v.*

*United States* (1878) 98 U.S. 145 [25 L.Ed. 244], the defendant was charged with bigamy and would not divulge the whereabouts of his second wife, thus interfering with the prosecutor's attempt to subpoena her for a retrial. He boldly told the officer that his wife would not appear at the retrial. Over a confrontation clause objection, the trial court allowed her previous testimony into evidence. The United States Supreme Court affirmed the bigamy conviction, holding that the defendant was estopped to insist upon confrontation rights since he himself was responsible for her absence. The court explained that this rule rested upon the maxim that no one can be permitted to take advantage of his own wrong. (98 U.S. at pp. 158–161.)

In the *Giles* case, the defendant was charged with the murder of his girlfriend. Three weeks before the murder, the victim told the police, inter alia, that the defendant had threatened to kill her. Over a confrontation clause objection, the trial court allowed this statement, and others, into evidence. The United States Supreme Court reaffirmed the "forfeiture by wrongdoing" concept but refined the rule, saying that it had application only where the defendant's conduct was "designed" to prevent testimony. That is to say, the defendant must have "intended" to prevent testimony before the "forfeiture by wrongdoing" concept could be utilized to admit unconfronted statements. (*Giles v. California, supra*, 554 U.S. at p. ___ [171 L.Ed.2d at p. 500].)

■ These precedents speak to the situation for the admission of prior testimony or statements but there is no logical reason why the forfeiture concept should not be applicable here. The present situation, in our opinion, is equally, if not more, egregious and cries out for an estoppel. We conclude that a defendant is estopped from seeking refuge under the jeopardy umbrella where he has procured an 1118.1 judgment by designed wrongdoing. Even from the cold record it is apparent that appellant prevented or dissuaded a witness (§ 136.1) and/or conspired with Samuels to obstruct justice (§ 182, subd. (a)(2), (5)).

■ "The common-law forfeiture rule was aimed at removing the otherwise powerful incentive for defendants to intimidate, bribe, and kill the witnesses against them—in other words, it is grounded in 'the ability of courts to protect the integrity of their proceedings.' [Citation.]" (*Giles v. California, supra*, 554 U.S. at p. ___ [171 L.Ed.2d at p. 504].) Here the trial court protected the integrity of its own proceedings by vacating the partial acquittal. Appellant is estopped to complain that the trial court did so.

Our reverence for the finality of judgments, including those rendered pursuant to section 1118.1, must be tempered in extreme cases such as the

instant case. Our holding does not declare "open season" on the vacating of 1118.1 judgments when the prosecutor is able to "cure" a defect during the ongoing trial. Only where such a judgment is procured by designed wrongdoing will the defendant be estopped to complain that the trial court vacated an 1118.1 judgment of acquittal.

### Motion for Mistrial Regarding Appellant's Criminal Record

Appellant contends that the trial court erred in denying his motion for mistrial after the prosecutor questioned Samuels about appellant's criminal record. Samuels told the police that she was concerned for her children's safety and tried to break off the relationship when she learned that appellant had an extensive criminal record. At trial, Samuels denied making such a statement. Appellant argued that the prosecutor's questions were improper because the prior strike allegations were bifurcated and because appellant, in deciding not to testify, had not put his criminal "history up at issue."

The trial court overruled a hearsay objection and instructed that the evidence was not to be considered for the truth of the matter asserted, "but as to the state of mind of the witness." Appellant makes no showing that the trial court abused its discretion in allowing the evidence to be heard or by denying his motion for mistrial. (*People v. Cox* (2003) 30 Cal.4th 916, 953 [135 Cal.Rptr.2d 272, 70 P.3d 277].)

Appellant defended on the theory that Samuels was the aggressor and that he acted in self-defense. Samuels's fear of appellant and knowledge that he had committed prior serious criminal offenses was relevant and admissible to determine Samuels's state of mind. (*People v. Spencer* (1969) 71 Cal.2d 933, 944–946 [80 Cal.Rptr. 99, 458 P.2d 43]; *People v. Romero* (2007) 149 Cal.App.4th 29, 37–38 [56 Cal.Rptr.3d 678].)

After Samuels tried to break off the relationship, appellant called repeatedly and told her that "If I can't have you, no one will." Samuels told the police that she knew about appellant's extensive criminal record and feared appellant. The jury was properly instructed that the statement could only be considered to determine Samuels's state of mind. It is presumed that the jury understood and followed the instruction. (*People v. Alfaro* (2007) 41 Cal.4th 1277, 1326 [63. Cal.Rptr.3d 433, 163 P.3d 118].) Appellant had no due process right to exclude evidence about why Samuels feared for the safety of her children or used the knife to repel appellant's attack.

### Romero *Motion*

Appellant contends that the trial court erred in denying his *Romero* motion to strike the prior serious felony convictions. (*People v. Superior Court*

(*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].) In a bifurcated proceeding, appellant waived jury and admitted three prior strike convictions: a 1982 robbery as a juvenile, a 1991 robbery conviction, and a 1996 robbery of a postal letter carrier.

At the sentencing hearing, appellant argued that the prior convictions were remote in time and should be stricken because appellant did not personally use a weapon in committing the robberies. The trial court stated: "My first inclination, just because of the remoteness in time of the juvenile prior, was to strike it. [¶] I looked at all three [prior convictions] individually. . . . [¶] . . . [T]he comments that were in the juvenile case file that were submitted by the psychologist at the time, unfortunately, are similar to those that the court still sees present in Mr. Pearson. And this is the exact kind of situation where the Three-Strikes law was intended."

■ Appellant argues that the 1982 robbery conviction should be stricken because he was not afforded the right to a jury trial when the matter was adjudicated in juvenile court. Appellant, however, admitted the prior conviction was a strike and waived any error. (See *People v. Scott* (1994) 9 Cal.4th 331, 351 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060–1061 [120 Cal.Rptr.2d 687].) Unless and until our Supreme Court holds otherwise, we conclude that "a juvenile adjudication may be used as a strike to enhance an adult offender's sentence notwithstanding the absence of the right to a jury trial in delinquency proceedings." (*People v. Smith* (2003) 110 Cal.App.4th 1072, 1075 [1 Cal.Rptr.3d 901].)[3]

Appellant complains that the trial court read and considered a psychologist's report in the juvenile court file discussing behavioral problems "similar to those that the court still sees present . . . ." Appellant speculates that the trial court relied on its "personal feelings" rather than the evidence because the psychologist's report is not part of the record on appeal.[4]

---

[3] In a recent Sixth Appellate District case, two justices concluded that a juvenile adjudication cannot constitutionally be used as a strike because a juvenile offender does not have the right to a jury trial in juvenile proceedings. (*People v. Nguyen* (2007) 152 Cal.App.4th 1205 [62 Cal.Rptr.3d 255].) On October 10, 2007, our Supreme Court granted review in *People v. Nguyen* (S154847). Pending the Supreme Court's resolution of this issue, we adhere to the prevailing view that prior juvenile adjudications may constitutionally be used as strikes under the "Three Strikes" law. (*People v. Buchanan* (2006) 143 Cal.App.4th 139, 149 [49 Cal.Rptr.3d 137]; *People v. Superior Court (Andrades)* (2003) 113 Cal.App.4th 817, 830–834 [7 Cal.Rptr.3d 74]; *People v. Lee* (2003) 111 Cal.App.4th 1310, 1312–1316 [4 Cal.Rptr.3d 642]; *People v. Smith, supra,* 110 Cal.App.4th at pp. 1077–1079; *People v. Bowden* (2002) 102 Cal.App.4th 387, 391–394 [125 Cal.Rptr.2d 513]; *People v. Fowler* (1999) 72 Cal.App.4th 581, 584–587 [84 Cal.Rptr.2d 874].)

[4] We have taken judicial notice of the juvenile court file which includes an October 8, 1982 psychological evaluation by Gary Abrams, Ph.D. (*In re Pearson*, Super. Ct. L.A. County,

Appellant, however, did not object to the trial court's findings or augment the record on appeal to include the juvenile court file. It is presumed that the trial court considered all relevant factors in denying the motion to strike. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 [81 Cal.Rptr.2d 564].) Based on the record presented, appellant makes no showing that the trial court acted arbitrarily or abused its discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 [14 Cal.Rptr.3d 880, 92 P.3d 369].) Nor was appellant prejudiced. Even if the trial court struck the 1982 juvenile adjudication, appellant would have received the same three strikes sentence based on the 1991 and 1996 robbery convictions.

■ The argument that the robbery convictions are remote in time is without merit where, as here, the defendant has led a continuous life of crime. (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [68 Cal.Rptr.2d 269] [20-year-old felony conviction not remote given defendant's criminal recidivism].) Appellant has a 25-year criminal history that includes battery, robbery, assault with a firearm, sexual battery, a 1991 robbery conviction resulting in a four-year prison sentence, and a 1996 conviction for robbery of a postal carrier that resulted in a 135-month prison sentence. "[H]e is the kind of revolving-door career criminal for whom the Three Strikes law was devised." (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320 [87 Cal.Rptr.2d 829].)

Appellant contends that the prior convictions should be stricken because the current offense was merely a "domestic argument" in which the victim suffered no injuries. We disagree. The probation report lists three aggravating factors and no mitigating factors, noting that the crime involved a deadly weapon and great violence, and that appellant "has engaged in a pattern of violent conduct which indicates a serious danger to society." This was not a mere domestic argument. Appellant waited for the victim and carried out a deadly assault at an elementary school in front of the victim's six-year-old son. This confrontation with a knife could have easily culminated in great bodily injury to Samuels had appellant not lost control of the knife.

■ Given appellant's age (40), his extensive criminal history which includes three robberies, aggravated assault and sexual battery, appellant's poor performance on probation and parole, and the violent nature of the current offense, it would have been an abuse of discretion not to impose a

No. J353363.) Dr. Abrams reported that appellant abused alcohol and marijuana on a daily basis, that appellant had prior arrests for robbery and assault with a deadly weapon, and that appellant suffered from "precariously controlled infantile, aggressive, [and] assaultive impulses."

three strikes sentence. (See, e.g., *People v. Williams* (1998) 17 Cal.4th 148, 163–164 [69 Cal.Rptr.2d 917, 948 P.2d 429]; *People v. Humphrey, supra,* 58 Cal.App.4th at p. 813; *People v. Gaston, supra,* 74 Cal.App.4th at p. 320 ["unrelenting record of recidivism" compels conclusion defendant falls within spirit of three strikes law].)

The judgment is affirmed.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied August 28, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 2, 2008, S166658.