Filed 12/23/14  P. v. Carriere CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEITH CARRIERE,<br><br>    Defendant and Appellant. | B251254<br><br>(Los Angeles County<br>Super. Ct. No. BA401417) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Craig Elliott Veals, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Garett A. Gorlitsky, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted appellant Keith Carriere of first degree burglary with a person present, a felony (Pen. Code, § 459).[1]  In a bifurcated trial, the trial court found true the allegations that appellant had suffered five previous serious felonies (§ 667, subd. (a)(1)); five prior strikes (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)), and served six prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced appellant to 50 years to life in state prison as follows:  25 years to life for the burglary, plus five years for each serious felony prior, for an additional 25 years to run consecutively.  "[F]or sentencing purposes," the court struck each of the one-year prison priors.

Appellant contends the trial court abused its discretion in failing to strike his five prior strike convictions.  We disagree and affirm.[2]

## FACTS

**Prosecution Case**

Appellant and Evelyn Jones (Jones) lived in the same apartment complex on East Seventh Street in Los Angeles, which had surveillance cameras in the hallways.  In the early morning hours of August 13, 2012, Jones and her boyfriend were asleep in her apartment.  Jones woke up around 3:00 a.m., ate some food, and opened the apartment door for fresh air.  She went back to sleep and woke up again at 6:00 a.m.  When she went to the bathroom, she noticed that her CD player was missing.  Jones asked her boyfriend about it.  He said he thought it was still in the bathroom.  When he started to roll back over in bed, Jones "told him to get out because he wasn't concerned [with] what was going on."

Jones went down to the courtyard and started yelling that someone had stolen her property.  At some point before 8:00 a.m., Jones went back to her apartment and noticed that her cell phone was missing from the top of her dresser.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Appellant has filed a petition for writ of habeas corpus, case No. B255124, which is considered concurrently with this appeal.  A separate order will be filed in that matter.

When the property manager arrived, Jones told him what had happened. At some point, appellant walked up and said that he had bought the missing items from someone on the street. He told Jones that he sold her cell phone, but still had her CD player. Jones followed appellant to his apartment, and he gave her back her CD player. She never recovered her cell phone.

Jones and the property manager reviewed the surveillance video from the hallway camera near Jones's door, which was played for the jury. The video showed appellant walk past Jones's door at around 3:00 a.m., return to her door, and then enter her apartment with nothing in his hands. The video then showed appellant leaving Jones's apartment at approximately 3:08 a.m. According to the property manager, appellant appeared "to be closing the door again in a very soft, quiet manner, and you see there is something in his left hand."

At approximately 3:10 a.m., appellant was seen again on the video. The property manager testified that "You see him peaking [*sic*] through the door." Appellant reentered the apartment with nothing in his hands and left about five seconds later with "something in his right hand." Jones explained, "It wouldn't take but a few steps to get from my door to where my dresser is because my place is so small." The property manager agreed that Jones's apartment is "very small."

When police officers arrived at the apartment complex, Jones was upset and told them that appellant had returned her radio and had told her, "Tell the property manager not to play the camera or the video surveillance." The officers watched the video, arrested appellant and took him to the police station. After appellant was read his rights, he told the officers that Jones's boyfriend sold him the radio for two dollars, and that he told Jones, "Don't play the video camera. I will give you back the radio. I just don't know where the cell phone is at." Appellant refused to talk about the cell phone, stating that he did not remember anything about the phone.

Jones had convictions for selling cocaine in 2008 and 2009 and soliciting prostitution in 2012. While Jones occasionally used cocaine, she was not under the

influence of any drugs the night of the burglary. Jones knew that her boyfriend did not get out of bed at around 3:00 a.m. because he would have had to climb over her and she would have awakened. Her boyfriend had never stolen from her in the six to seven years they had been together.

**Defense Case**

Appellant testified that he occasionally spoke to Jones in passing and had previously sold her drugs. Appellant did not know Jones's boyfriend, but had seen him with Jones. Appellant stated that on the night of the incident he was "cooperating for" his wife by cleaning the dishes and the can opener fell in the trash. His "intent was to get the can opener out, but things altered [his] course of things." He went to the fourth floor trash room to empty the trash and found the can opener, which he put in his pocket. As he passed by Jones's apartment, he heard her boyfriend say, "Hey, hey," and "You got anything?" The boyfriend was referring to drugs. Appellant said no, and that it was too late to get anything. The boyfriend then said, "Look, well, let me—let me pawn you this radio." Appellant responded that he did not need a radio. The boyfriend insisted, "Let me pawn it to you and I will get it back in the morning. I just need you to give me something to wake me up." Appellant complied.

Later that morning when appellant heard Jones yelling, he told her that he had her belongings "[b]ecause the dude gave it to me." Appellant took Jones to his apartment, gave her the CD player, and said, "Look, look at all my stuff, girl. You know I don't need this." Jones asked why her boyfriend gave appellant the CD player, and appellant responded, "Come on. You already know." Then appellant and Jones left his apartment. Appellant had his own CD player and two cell phones.

On cross-examination, appellant admitted there was a trash room on his floor, the second floor, but he decided to use the trash room on the fourth floor. The second time appellant went into Jones's apartment, her boyfriend offered him a cell phone, which appellant did not take.

4

## DISCUSSION

Appellant contends the trial court abused its discretion by refusing to strike his five prior strike convictions.

When a trial court denies a defendant's motion to dismiss a prior strike received under the Three Strikes law, it does not abuse its broad discretion "unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) "It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

The party challenging the court's ruling under section 1385 has the burden to show an abuse of discretion.[3] (*People v. Jordan* (1986) 42 Cal.3d 308, 316; *People v. Carmony, supra*, 33 Cal.4th at p. 377; *People v. Romero* (2002) 99 Cal.App.4th 1418, 1433–1434.) "'In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978.) The reviewing court also must presume the trial court considered all of the relevant factors in the absence of an affirmative record to the contrary. (*People v. Myers, supra,* 69 Cal.App.4th at p. 310.)

When ruling on whether to strike a prior conviction under the Three Strikes law or in reviewing such a ruling, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the

---

[3]    Section 1385, subdivision (a) provides in part that a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Our Supreme Court has explained that the Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony, supra*, 33 Cal.4th at p. 378.) It is only in an "extraordinary" case that a career criminal can be deemed outside the spirit of the Three Strikes law; "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid*.)

Here, the trial court did not abuse its broad discretion in refusing to strike appellant's five prior strike convictions. These strikes are for: (1) robbery (§ 211) in 1977; (2) kidnapping to commit robbery (§ 207) in 1981; (3) robbery (§ 211) in 1983; (4) robbery (§ 211) in 1990; and (5) assault on a peace officer (§ 245, subd. (c)) in 2005. Appellant was on parole when he committed the current offense. The record shows that in the last 30 years, appellant has never been free from prison for more than five years, and has never successfully completed probation or parole. Appellant's last two strike convictions qualified him for Three Strike sentences but he was able to obtain lesser terms via plea bargains. In both instances, appellant committed additional crimes upon his release from prison. Clearly, appellant is a career criminal for whom all prior attempts at rehabilitation and deterrence have failed. His record of unrelenting recidivism makes him exactly "the kind of revolving-door career criminal for whom the Three Strikes law was devised." (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320; *People v. Pearson* (2008) 165 Cal.App.4th 740, 749; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)

Moreover, appellant's commission of the current offense also demonstrates that the trial court did not abuse its discretion. Appellant's current offense of residential burglary with a person present is a "violent felony." (§ 667.5, subd. (c)(21).) Jones's apartment was small, so appellant was aware there were people present when he burglarized it. Indeed, the surveillance video shows that he was inside the apartment the first time for eight minutes. His entering the apartment a second time evidences his deliberateness. As the People note, appellant had an opportunity to reflect on his criminal behavior, but still made the decision to go forward with his criminal objective. Further, appellant entered the apartment in the early morning hours when Jones was asleep and particularly vulnerable. Appellant later told Jones not to look at the video. Appellant refused to take responsibility for his actions; he lied on the witness stand and put the blame on Jones's boyfriend.

Appellant argues that the trial court erroneously believed that it lacked discretion to strike his prior strike convictions. But appellant quotes the trial court out of context. The record reflects the court understood it had discretion, but it believed that appellant's "substantial" and "unrelenting" criminal history did not justify using that discretion. The court also stated, "I am looking at the rap sheet, 1, 2, 3, 4, 5, 6, 7, 8, 9 pages of entries. And they are serious offenses that are all through it. So yes, I guess in the strictest sense the court has discretion, but I think it would be an abuse of discretion for me to strike any of the strikes."

Appellant argues that he falls outside the spirit of the Three Strikes law for several reasons. First, he merely notes that prior to trial he was offered a nine-year plea deal. But he says nothing further on this subject. We note that in its sentencing memorandum, the People asked for the maximum sentence.

Second, appellant asserts that his prior strikes are "remote." But his criminal history shows that he has led a continuous life of crime. "Where, as here, the defendant has led a continuous life of crime after the prior, there has been no 'washing out' and there is simply nothing mitigating about a 20-year-old prior. Phrased otherwise, the

7

defendant has not led a 'legally blameless life' since the 1976 prior. [Citations.] Far from being 'washed out,' this prior was 'dyed in.'" (*People v. Humphrey, supra*, 58 Cal.App.4th at p. 813.)

Third, appellant describes his current offense as a "minor theft offense" and asserts that it "did not result in any physical injury or violence" and that he "did not possess or use a weapon." But as previously noted, residential burglary with a person present is a violent felony under the Three Strikes law. (§§ 667.5, subd. (c)(21), 667, subd. (d)(1).) There is nothing "minor" about it. Moreover, the alleged "nonviolent or nonthreatening nature of the [current] felony cannot alone take the crime outside the spirit of the law." (*People v. Strong* (2001) 87 Cal.App.4th 328, 344.)

Fourth, appellant asserts that the property taken was of "small value" and he "believed he had a claim to the property." But the small value of the stolen property did not prevent his offense from constituting a violent felony. And Appellant's assertion that he believed he had a claim to the property is disingenuous; appellant was caught on video burglarizing the apartment.

Fifth, appellant points out that he has a history of mental illness, which he claims should mitigate his sentence. It is true that the probation report states appellant has been in and out of Patton State Mental Hospital. But there is no evidence in the record that appellant's mental health issues had anything to do with the current offense. Indeed, the probation report states that the current offense "does not appear to be related to the defendant's document[ed] mental health problems."

Sixth, appellant simply notes that he is 55 years old. But "middle age, considered alone, cannot take a defendant outside the spirit of the law; otherwise, the very factor that takes a defendant within the spirit of the law—a lengthy criminal career with at least one serious or violent felony—would have the inevitable consequence—age—that would purportedly take him outside it." (*People v. Strong, supra*, 87 Cal.App.4th at p. 332.)

Finally, appellant asserts that he has a supportive girlfriend, was involved in religious activities, and was a student in community college. But none of these positive aspects in his life prevented him from reoffending while on parole once he saw an open door in his own apartment building.

Given appellant's substantial criminal history, the nature of the current offense, his inability to stay out of criminal trouble, and the lack of mitigating circumstances, the trial court did not abuse its discretion in refusing to strike appellant's five prior strike convictions in the furtherance of justice. As the trial court stated, appellant is "the poster child for the Three Strikes Law."

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                ASHMANN-GERST


We concur:


_____, P. J.
            BOREN


_____, J.
            CHAVEZ

9