Filed 4/30/25  P. v. Hidalgo CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>THOMAS LEE HIDALGO,<br><br>        Defendant and Appellant. | A170371<br><br>(Mendocino County<br>Super. Ct. Nos. 24CR03294,<br>24CR03295) |

After the trial court denied defendant Thomas Lee Hidalgo's motion to suppress evidence (Pen. Code, § 1538.5),[1] Hidalgo pled no contest to knowingly bringing drug paraphernalia into jail (§ 4573, subd. (a)) and admitted that the plea constituted a violation of his parole in a separate case. The trial court sentenced Hidalgo to two years in state prison for bringing drug paraphernalia into jail and a concurrent 180 days for the parole violation.  On appeal, Hidalgo's sole argument is that the trial court erred in denying his motion to suppress because the evidence was obtained from searches that were the product of an unlawful detention.  We conclude the trial court correctly denied the motion to suppress and therefore affirm the judgment.

---

[1]     Further undesignated statutory references are to the Penal Code.

1

## The Charges and Parole Revocation Petition

On January 3, 2024, the Mendocino County District Attorney filed a complaint in case No. 24CR03294 charging Hidalgo with knowingly bringing drug paraphernalia into jail (§ 4573, subd. (a)) (count 1) and falsely identifying himself to a peace officer (§ 148.9, subd. (a)) (count 2). The complaint further alleged as to count 1 that Hidalgo suffered a prior "strike" felony conviction (arson, § 451, subd. (d)) within the meaning of sections 1170.12 and 667.

On that same day, a petition for revocation of parole was filed in case No. 24CR03295, alleging Hidalgo violated the conditions of his parole by committing the offenses charged in the complaint in case No. 24CR03294.

On January 29, following a preliminary hearing, the complaint was amended to include circumstances in aggravation for sentencing.

## The Motion to Suppress Evidence

On March 1, Hidalgo filed a motion to suppress evidence that he claimed was the fruit of an unlawful detention and subsequent searches.

On March 18, the trial court held a hearing on the motion. The court heard testimony from August Kinney, a sergeant with the Ukiah Police Department at the time of his testimony, but a deputy sheriff for Mendocino County at the time of the underlying incident.[2] The trial court also admitted into evidence a transcript of Deputy Kinney's bodycam footage of the incident.[3] The evidence disclosed the following:

---

[2]    As the parties do, we refer to Kinney as "Deputy Kinney," his title at the time of the incident.

[3]    The bodycam video recording was also admitted into evidence, but it is not included in the record on appeal.

Around 1:00 a.m. on December 31, 2023, Deputy Kinney was patrolling in Ukiah. Deputy Kinney saw a man, later identified as Hidalgo, with a face mask on walking along the sidewalk. Deputy Kinney turned his patrol car around, stopped the car, rolled down his window, "and engaged [Hidalgo] in casual conversation" from the car. Deputy Kinney asked Hidalgo "what his name was." Hidalgo answered, "Jordan Michaelson." Deputy Kinney ran that name through his patrol car's computer, but the name did not return any matches.

Deputy Kinney had a hunch that Jordan Michaelson was not Hidalgo's real name, so Deputy Kinney "parked and exited [his] vehicle to investigate further." As he was getting out of the car, he told Hidalgo, " 'Hang on for one sec,' " shining his flashlight at Hidalgo. At that point, another deputy pulled up in another patrol vehicle and stepped out. Deputy Kinney asked Hidalgo several questions and also asked Hidalgo to take off his face mask. Hidalgo removed his face mask. Deputy Kinney recalled he had interacted with Hidalgo from prior law enforcement encounters but did not recall his name at the moment. Hidalgo was "extremely fidgety and nervous" and sweating, and he appeared to be under the influence of a controlled substance.

Deputy Kinney asked Hidalgo whether he had any weapons on him, and Hidalgo said he did not. " 'Can I check?,' " Deputy Kinney asked, but Hidalgo said, " 'I'd rather not.' " Deputy Kinney nonetheless told Hidalgo he was going to check him for weapons and then pat-searched him, finding nothing.

Deputy Kinney continued to ask Hidalgo questions, such as whether he had "anything illegal" on him. Hidalgo said no, before declining another request from Deputy Kinney to search him, claiming he was not "on probation or parole."

3

Deputy Kinney also asked Hidalgo to write his name and date of birth on an index card.  Hidalgo wrote down the name "Jordan Michaelson" and a date.  Deputy Kinney conducted a records check with dispatch with the information that Hidalgo provided and was advised there were no matches.

About five minutes into the encounter, Deputy Kinney placed Hidalgo in handcuffs, saying he was not under arrest but that Deputy Kinney was going to detain him because, "I have to figure out who you are and I'm not convinced that you are who you say you are because we have no record of that person."

A few minutes after placing Hidalgo in handcuffs, Deputy Kinney began to recognize Hidalgo and asked, " '[A]re you Thomas?,' " which is Hidalgo's first name.  Hidalgo continued to deny his identity.  Deputy Kinney examined some of Hidalgo's tattoos and looked up a booking photograph of "Thomas Hidalgo" on his patrol car computer, which verified his belief that Hidalgo was in fact Thomas Hidalgo.  Deputy Kinney also conducted a records check with dispatch on the name Thomas Hidalgo, who dispatch confirmed was on parole.

Deputy Kinney searched Hidalgo again.  The search revealed a lighter. Deputy Kinney confirmed with Hidalgo's parole agent that he was prohibited from possessing incendiary devices, and the agent issued a parole hold. Deputy Kinney then placed Hidalgo under arrest for violating his parole and giving a false name to a peace officer.

After Deputy Kinney took Hidalgo to the jail, a correctional deputy searched Hidalgo and found contraband in his clothing.

Following Deputy Kinney's testimony, the prosecutor, citing *People v. Watkins* (2009) 170 Cal.App.4th 1403 (*Watkins*), argued that Hidalgo was estopped from contesting the validity of the detention and ensuing searches,

4

because he gave Deputy Kinney a false name and thus prevented him from discovering Hidalgo was on parole with a search condition. Defense counsel argued that Hidalgo was unlawfully detained when Deputy Kinney got out of the patrol car and said to Hidalgo, " 'Hang on for one sec,' " because there was no reasonable suspicion to detain him. Defense counsel also disputed the prosecutor's estoppel argument. The trial court invited the parties to submit supplemental briefing.

After receiving briefing from the parties, the court heard further arguments on March 21. Following that argument, the court denied the motion to suppress. The court found that Hidalgo was detained when Deputy Kinney got out of his patrol vehicle and said to Hidalgo, " 'Hang on for one sec,' " and that the detention was not justified by reasonable suspicion or probable cause of criminal activity. However, relying on *Watkins*, the court determined that because Hidalgo had concealed his identity before he was detained—thus preventing Kinney from knowing Hidalgo was on parole and subject to a search condition—Hidalgo was estopped from challenging the validity of his detention, ensuing searches, and the evidence derived from them.

**The Plea and the Sentence**

Also on March 21, pursuant to a negotiated disposition, Hidalgo pled no contest to knowingly bringing drug paraphernalia into jail as charged in count 1 in case no. 24CR03294, and admitted that the plea constituted a violation of parole in case No. 24CR03295. In exchange, the remaining charge and strike allegation in the complaint were dismissed, and the indicated sentence was the low term of two years in state prison for count 1 and a concurrent 180 days for the parole violation.

On April 18, the trial court sentenced Hidalgo in accordance with the

negotiated disposition.

This timely appeal followed.

## DISCUSSION

### The Trial Court Did Not Err in Denying the Motion to Suppress

Hidalgo argues the trial court erred in denying his motion to suppress evidence of the lighter and drug paraphernalia because the evidence was obtained from an unlawful detention and ensuing searches. Hidalgo contends, and the People do not disagree, that he was detained when Deputy Kinney stepped out his patrol vehicle and told Hidalgo to " 'Hang on one sec,' " and that this detention was unlawful for lack of reasonable suspicion that criminal activity was afoot. The parties, however, disagree on whether defendant was estopped from challenging the validity of the detention, subsequent searches, and the evidence derived from them.

We do not reach the merits of defendant's constitutional claim, since we resolve the appeal on the issue of a estoppel. (See *People v. Pearson* (2008) 165 Cal.App.4th 740, 744–745 (*Pearson*) [holding it was unnecessary to reach the merits of defendant's constitutional and statutory jeopardy claims, concluding he was estopped from asserting on appeal such errors that were induced by his own conduct].) Where, as here, the relevant facts are undisputed, whether defendant was estopped from raising his Fourth Amendment challenges presents a pure question of law subject to de novo review. (See *People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485, 518 ["Questions of law and the application of law to undisputed facts are subject to de novo review."]; cf. *People v. Balint* (2006) 138 Cal.App.4th 200, 205 [appellate court independently determines the legality of a challenged search or seizure where the facts are undisputed].) And we conclude that the trial court correctly found Hidalgo was estopped from challenging the validity of the detention, searches, and evidence obtained from the searches. On this

basis, the trial court properly denied the motion to suppress.

### *Applicable Law*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." (U.S. Const., 4th Amend.) " 'A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search [or seizure].' " (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.) "If the prosecution cannot meet this burden, the exclusionary rule normally requires the suppression of any evidence obtained from the search or seizure." (*People v. Mathews* (2018) 21 Cal.App.5th 130, 137 (*Mathews*), citing *Wong Sun v. United States* (1963) 371 U.S. 471, 487–488.)

" '[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search [or seizure] conducted pursuant to consent.' " (*People v. Woods* (1999) 21 Cal.4th 668, 674.) Parolees who accept conditions of probation "may validly consent in advance to warrantless searches [or seizures] in exchange for the opportunity to avoid or obtain release from custody." (*People v. Session* (2023) 93 Cal.App.5th 723, 731.) "Every inmate eligible for release on parole is subject, by statute, 'to search or seizure . . . at any time.' " (*Ibid.*, citing § 3067, subd. (b)(3).) "The California Supreme Court has repeatedly said such searches are lawful. (*People v. Woods*, [(1999)] *supra*, 21 Cal.4th [668] at p. 675.) There are only two requirements: the parolee's status must be known to the officer,[4] and

---

4    "Because a search condition is statutorily mandated for all parolees [citations], the officer need only know that the individual is on parole." (*People v. Douglas* (2015) 240 Cal.App.4th 855, 862.) In other words, " ' "[A]n officer's knowledge of parole status [is] equivalent to knowledge of a parole search condition." ' " (*Ibid.*) By contrast, "[a] search condition is not

the search may not be 'arbitrary, capricious, or harassing.' [(*People v.*] *Schmitz* [(2012)] 55 Cal.4th [909,] 916.)" (*People v. Session, supra*, 93 Cal.App.5th at p. 731.)

In *Watkins*, the decision that the trial court here relied on to deny the motion to suppress, a police officer stopped the defendant's vehicle, and the defendant stated that he was on probation but falsely identified himself as his brother. (*Watkins, supra*, 170 Cal.App.4th at p. 1406.) A record check of the brother's name did not reveal that the brother was subject to a search condition, but the officer nonetheless conducted a search and found contraband. (*Ibid.*) After his arrest, the defendant gave his true name, and a record check revealed that he "was on searchable probation." (*Ibid.*) The Court of Appeal held that even though the officer was not aware of the search condition when he performed the search, the defendant was estopped from challenging the legality of the search as a probation search because he had concealed that he was subject to the condition by lying about his identity. (*Id.* at p. 1409.)

*Watkins* explained that "[t]he equitable principle 'No one can take advantage of his own wrong' (Civ. Code § 3517) applies in criminal law." (*Watkins, supra*, 170 Cal.App.4th at pp. 1408–1409, citing *People v. Concepcion* (2008) 45 Cal.4th 77, 81–82 [a defendant who absconds from custody during trial is estopped to argue that the court violated his constitutional right to be present at trial by proceeding in his absence] and *Pearson, supra*, 165 Cal.App.4th at p. 742, 744–747 [a criminal defendant

---

mandated by statute for every *probationer*, and probation search clauses are not worded uniformly." (*Id.* at p. 863, italics added.) "Thus, in the case of probation searches, the officer must have some knowledge not just of the fact someone is on probation, but of the existence of a search clause broad enough to justify the search at issue." (*Ibid.*)

who obtains a benefit in a judicial proceeding by intentionally concealing key information about his case is estopped to argue, when that information comes to light, that the court cannot use it against him].) Applying that principle to the facts before it, *Watkins* concluded, "Defendant concealed his identity from [the police officer], a misdemeanor offense (§ 148.9, subd. (a)); by doing so, he also concealed his probation search condition. Then he claimed that this ploy entitled him to suppress evidence obtained from what would otherwise plainly have been a lawful probation search." (*Watkins*, at p. 1409.) "[D]efendant committed a wrong and then tried to profit from it. . . . [W]e conclude that this misconduct results in an estoppel." (*Ibid*.)

In *Mathews*, Division One of this court, following *Watkins*, held that "when a probationer gives a false name to a police officer, and a record check of that name fails to reveal that the probationer is in fact subject to a search condition, the probationer is estopped from challenging the legality of an ensuing search or seizure that would have been authorized had the officer been aware of the condition." (*Mathews*, *supra*, 21 Cal.App.5th at p. 133.) *Mathews* explained "that estoppel is triggered when an officer receives the results from a record check based on a false name" (*id.* at p. 140, italics omitted)—i.e., when "the officer would have known about the search condition but for [the defendant's] dishonesty." (*Id.* at pp. 140–141, fn. omitted.) Accordingly, *Mathews* held that the defendant was estopped from challenging the seizure of his cell phone and the evidence derived from it where the seizure occurred after police ran a check on a false name given by the defendant. (*Ibid*.)

9

*Analysis*

We agree with the trial court that under *Watkins* and *Mathews*, Hidalgo was estopped from challenging the validity of the detention, subsequent searches, and evidence derived from them.

Hidalgo gave a false name to Deputy Kinney during their initial, consensual encounter. Deputy Kinney then ran a record check on that false name and the results of that record check yielded no matches. When Deputy Kinney received the results from a record check based on the false name, "estoppel was triggered." (*Mathews, supra,* 21 Cal.App.5th at p. 140.) But for Hidalgo's lie, Deputy Kinney would have discovered the fact that Hidalgo was on parole and therefore subject to a search condition. In taking the position that his detention shortly after he gave a false name was unlawful, and that the evidence seized from searches following that detention therefore should be suppressed, Hidalgo "tried to profit" from his wrongdoing. (*Watkins, supra,* 170 Cal.App.4th at p. 1409.) In other words, Hidalgo "claimed that this ploy entitled him to suppress evidence obtained from what would otherwise plainly have been a lawful [parole] search." (*Ibid.*) Thus, under *Watkins* and *Mathews*, Hidalgo's misconduct estopped him from challenging the validity of the detention, searches, and evidence derived from them. On this basis, the trial court properly denied the motion to suppress.

Hidalgo's counterarguments are unpersuasive.

Hidalgo attempts to distinguish this case from *Watkins* and *Mathews.* He asserts that in *Watkins*, police searched the defendant during an otherwise lawful traffic stop and lawfully detained him for the traffic violation (see *Watkins, supra,* 170 Cal.App.4th at p. 1410), under which circumstances the defendant "was then required by section 148.9 to give a true name to the officer." (See § 148.9, subd. (a) [makes it a misdemeanor for

10

any person who falsely represents or identifies himself or herself as another or fictitious person to any peace officer upon "lawful detention or arrest"].) Hidalgo then asserts that here, unlike in *Watkins*, at the time he gave a false name to Deputy Kinney, Hidalgo was not yet detained and their encounter was consensual, and therefore Hidalgo "had no duty to give the deputy his correct name and failing to do so was not a crime." And he goes on to claim that he "committed no wrongdoing, and thus cannot be estopped from making the claim that the detention and search that followed violated the Fourth Amendment." In a similar vein, Hidalgo argues *Mathews* is distinguishable, asserting that whereas the defendant there gave a false name during a lawful detention, here, Hidalgo "was walking down the street," "had committed no crime," and "was not lawfully detained."

In essence, Hidalgo argues that "wrongdoing" under the estoppel doctrine is limited to criminal acts, and that *Watkins* and *Mathews* purported to limit the wrongdoing to a violation of section 148.9. We disagree. Neither *Watkins* nor *Mathews* limited the estoppel doctrine to criminal acts. To the contrary, *Watkins* apparently endorsed a broad view of "wrongdoing." *Watkins* noted that "the Civil Code maxim" in section 3517—"No one can take advantage of his wrong"—states the principle underlying estoppel "as broadly as possible." (*Watkins*, *supra*, 170 Cal.App.4th at pp. 1408, 1410.) *Watkins,* citing *Pearson*, *supra*, 165 Cal.App.4th at page 742, stated that "by leading off with the Civil Code maxim, . . . *Pearson* supports the . . . conclusion [that] the estoppel doctrine in the criminal context should apply to any and all wrong from which a defendant seeks to profit." (*Watkins*, at p. 1410.) And, as in *Pearson*, *Watkins* also relies on the Civil Code maxim. (*Watkins*, at pp. 1408–1409.)

Moreover, the application of estoppel in *Watkins* and *Mathews* did not

11

hinge on whether the defendants' "wrongdoing" in providing a false name itself constituted a crime. Indeed, *Mathews* did not even mention section 148.9. Rather, as the People note, *Mathews* made clear that the wrongdoing was the defendant's lie about his name: "[W]hen a probationer *gives a false name* to a police officer, and a record check of that name fails to reveal that the probationer is in fact subject to a search condition, the probationer is estopped from challenging the legality of an ensuing search or seizure that would have been authorized had the officer been aware of the condition." (*Mathews*, *supra*, 21 Cal.App.5th at p. 133, italics added.) Thus, Hidalgo's attempts to distinguish *Watkins* and *Mathews* on the ground that his wrongdoing did not constitute a crime is unavailing.

Hidalgo next argues that his case is more akin to *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247 (*Myers*). In *Myers*, a police officer stopped the defendant and asked him whether he was on parole or probation. (*Myers*, at p. 1251.) Although the defendant was on informal probation, he falsely told the officer " 'that he had [been] discharged [from] parole . . . and was not on probation.' " (*Ibid*.) The officer did no record check and instead simply searched the defendant "without a warrant, probable cause, reasonable suspicion, or knowledge [the defendant] was on probation and subject to a search condition" and discovered contraband. (*Id*. at pp. 1251, 1256.) The Court of Appeal held that the evidence should have been excluded because not applying the exclusionary rule under the circumstances "would reward police misconduct, not deter it." (*Id*. at p. 1256.) The court also rejected the argument that the defendant's lie was significant, observing that the defendant's "response should have prompted [the officer] to conduct a record check where he would have discovered [the defendant] was on probation and subject to a search condition." (*Ibid*.)

Like Hidalgo here, the defendants in *Watkins* and *Mathews* relied on *Myers* to avoid estoppel. (*Watkins*, *supra*, 170 Cal.App.4th at p. 1410; *Mathews*, *supra*, 21 Cal.App.5th at p. 139.) And, as in *Watkins* and *Mathews*, we find such reliance misplaced. (*Ibid.*) *Mathews* explained: "As *Watkins* itself observed in distinguishing *Myers*, although *Myers* concluded that the evidence should have been suppressed despite the defendant's misrepresentation about his parole status, the conclusion was reached because it was the officer's failure to perform a record check, not the misrepresentation, that prevented the officer from learning about the search condition. [Citation.] In contrast, in *Watkins* the officer performed a record check, but the 'defendant's lie about his identity ensured that the . . . check would not disclose his probation search condition in time.' [Citation.] Thus, nothing in *Myers* undermines *Watkins*'s holding that a defendant can be estopped from challenging evidence obtained after a record check fails to reveal a search condition when the check was based on false information provided by the defendant." (*Mathews*, at p. 139.) Here, unlike in *Myers*, but similar to *Watkins* and *Mathews*, Deputy Kinney *did* conduct a record check based on the false name provided by Hidalgo during the consensual encounter. If, instead, Hidalgo had provided his true name, Deputy Kinney's record check would have revealed Hidalgo's parole status and search condition. Thus, *Myers* does not assist Hidalgo.[5]

---

[5] Besides disputing the estoppel finding, Hidalgo argues that the motion to suppress should have been granted on a separate ground: "that law enforcement later found out that [defendant] was on parole does not attenuate the taint of [his] unlawful detention and the discovery of the challenged evidence." (Capitalization and boldface omitted.) This challenge is based on the "attenuation doctrine," which "holds that, notwithstanding the exclusionary rule, '[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been

In sum, the trial court properly denied Hidalgo's motion to suppress.

## DISPOSITION

The judgment is affirmed.

---

interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.' " (*People v. McWilliams* (2023) 14 Cal.5th 429, 437–438.) But as the People note, they "did not rely on the doctrine of attenuation in the superior court, and the superior court did not deny the motion to suppress based on a finding of attenuation . . . . Thus, there is no reason for this court to consider the attenuation doctrine in this case." We agree with the People. Accordingly, we do not address this argument.

_____

RICHMAN, ACTING P. J.

We concur.


_____

MILLER, J.


_____

DESAUTELS, J.


(A170371N)