Filed 2/29/16  P. v. Bosco CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JOSEPH SHANE BOSCO,<br><br>    Defendant and Appellant. | F068693<br><br>(Super. Ct. No. VCF268399)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Chung Mi (Alexa) Choi for Plaintiff and Appellant.

-ooOoo-

A jury convicted appellant Joseph Shane Bosco of three counts of second degree robbery (Pen. Code,[1] § 211) and one count of second degree commercial burglary (§§ 459, 460). Enhancement allegations for personal use of a dangerous weapon (§ 12022, subd. (b)(1)) were found true as to all counts. These convictions arose from a shoplifting incident during which appellant attacked store employees with a knife while trying to flee with stolen merchandise.

In a bifurcated bench trial, appellant was found to have suffered at least three prior serious felony convictions within the meaning of section 667, subdivision (a), which also constituted "strikes" for purposes of California's Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Appellant was further found to have served five prior prison terms within the meaning of section 667.5, subdivision (b). The trial court subsequently granted a defense motion to strike all of the prior strike convictions in the interest of justice, and imposed an aggregate sentence of 24 years 8 months in prison.

Appellant presents two claims on appeal. First, he argues the trial court erred by failing to stay his sentence for the burglary conviction pursuant to section 654. Second, he contends that the trial court's imposition of two prior prison term enhancements should be stricken from the judgment because the underlying convictions were for drug offenses that are now treated as misdemeanors following the enactment of Proposition 47. The People cross-appeal, claiming the trial court abused its discretion by striking appellant's prior convictions for purposes of sentencing under the Three Strikes law.

To obtain relief under Proposition 47, appellant must first file an application pursuant to section 1170.18 to have any eligible felony convictions designated as misdemeanors. This cannot be accomplished on direct appeal; such requests must be presented to the trial courts that entered the original judgments of conviction. We

---

[1] All statutory references are to the Penal Code.

2.

therefore reject appellant's claim in regards to the prior prison term enhancements. We accept his position concerning the application of section 654 to the burglary count, but agree with the People's contention that the trial court abused its discretion when it struck the prior strike convictions. Therefore, we affirm the current convictions and enhancement findings, but reverse the judgment as to sentence and remand for resentencing in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 29, 2012, appellant entered a grocery store in Visalia with a backpack and a butterfly knife that was located in or around the waistline of his shorts. He placed the backpack inside of a shopping cart and proceeded to browse the store. A loss prevention officer named Eric Fischer monitored appellant's movements over a video surveillance system. Appellant put containers of milk and soda into the shopping cart as he walked through the aisles, and also placed approximately $32 worth of toiletries inside of the backpack. He eventually paid for the milk and soda, but never removed the toiletries from his bag.

After seeing appellant place items into the backpack, Fischer asked an assistant manager, Benjamin Quintero, to station himself outside of the entrance to the store. A third employee, Jerry Quillen, was advised of the situation and agreed to wait outside with Quintero. Fischer continued to watch appellant on camera and eventually followed a few steps behind him as he began to leave the store.

Once appellant had exited the building, Fischer identified himself as a store security officer and instructed him to stop. Appellant replied "No," lunged ahead, and was pulled backwards as Fischer grabbed his backpack. A fight ensued. Appellant pulled out his knife, opened it, and threatened to "poke" and "kill" the employees. He then attempted to stab Fischer and Quinterro as they tried to restrain him. Quillen intervened and succeeded in disarming appellant by stomping on his hand and kicking the

3.

knife out of reach.  The employees were eventually able to place handcuffs on appellant, but he continued to fight with them until police arrived.

Appellant was charged by information with three counts of second degree robbery (counts 1 through 3), one count of second degree commercial burglary (count 4), and one count of petty theft with prior theft-related convictions (former § 666; count 5).  These counts carried enhancement allegations of personal use of a dangerous/deadly weapon.  An additional enhancement for personal infliction of great bodily injury (§ 12022.7, subd. (a)) was pleaded in connection with count 1, but later dismissed for lack of evidence.[2]  Appellant was further alleged to have suffered five prior strike convictions, each allegedly constituting a prior serious felony conviction, and to have served five separate prior prison terms.

At trial, the victim employees provided testimony consistent with the facts summarized above.  Testifying in his own defense, appellant admitted to stealing items from the store but denied using his knife to threaten or attack anyone.  He claimed the knife simply fell out of a sheath he had been carrying it in during the scuffle, and that it was never in his hands.  The jury returned guilty verdicts on counts 1 through 4 and found true the allegations of personal use of a dangerous weapon.  No verdict was reached as to count 5 because it had been presented to the jury as an alternative charge to counts 1 through 3.

In a bench trial on the remaining enhancement allegations, the prosecution offered proof that appellant had been convicted of four prior strike and serious felony convictions.  According to the evidence, appellant was convicted in 1987 of both first degree burglary and attempted first degree burglary, then suffered another first degree

---

**2**     The encounter with appellant left Quintero with three fractured bones in his right hand, an injury that required two surgeries to repair and resulted in a four-month absence from work. Quintero testified to these facts at trial, but was unable to identify the precise mechanism of injury.  On its own motion, the trial court dismissed the enhancement allegation for lack of proof that appellant personally inflicted or caused the injury.

burglary conviction in 1988, and was again convicted of first degree burglary in 1992. Pursuant to this evidence, the trial court found the prior strike and serious felony conviction allegations to be true. Appellant's burglary convictions in 1987 and 1988 were shown to have collectively resulted in one prior prison term for purposes of section 667.5, subdivision (b). It was further proven that he served a separate prison term for the 1992 burglary conviction, returned to prison in 2002 and 2004 for separate felony drug convictions under a former version of Health and Safety Code section 11377, and was imprisoned again in 2009 for possession of ammunition by a felon (former § 12316, subd. (b)(1), now § 30305, subd. (a)).

Following the bench trial, appellant filed a motion pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) to have the prior strike conviction allegations stricken, i.e., dismissed, for purposes of sentencing. The so-called *Romero* motion was granted over strenuous objection by the prosecutor. Additional facts relevant to this issue are summarized in our discussion of the People's cross-appeal.

At sentencing, for reasons not made clear by the record, the prosecution represented to the trial court that appellant had only suffered three prior serious felony convictions for purposes of section 667, subdivision (a). Accepting the representation as true, the trial court imposed the following sentence: As to count 1, the upper term of five years plus an additional one-year term for the weapon enhancement. Concurrent terms for counts 2 and 3, with all related enhancements stayed. As to count 4, a consecutive term of eight months (representing one-third of the middle term). The sentence was further enhanced by three consecutive five-year terms for the prior serious felony convictions and three consecutive one-year terms for the prior prison term findings (two of the five incarcerations stemmed from the prior serious felony convictions and could not be used to increase the sentence), resulting in a total prison term of 24 years 8 months. Both sides filed timely notices of appeal.

## DISCUSSION

### Proposition 47

On November 4, 2014, California voters approved Proposition 47, also known as The Safe Neighborhoods and Schools Act. The statutes enacted by the passage of Proposition 47 classify as misdemeanors certain drug-related and theft-related offenses that were previously defined as felonies or wobblers, i.e., crimes punishable as either felonies or misdemeanors at a court's discretion. (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108.) As relevant here, the new legislation amended Health and Safety Code section 11377 such that possession of a controlled substance in violation of subdivision (a) of the statute, which was previously a wobbler offense, is now generally treated as a misdemeanor.[3] (Health & Saf. Code, § 11377, subd. (a); *People v. Lynall*, *supra*, at pp. 1108–1109.)

Imposition of a sentencing enhancement under section 667.5, subdivision (b) requires proof that a defendant served a prior term of imprisonment for a felony conviction. Appellant contends that Proposition 47 effectively invalidates enhancements imposed under section 667.5 when the offense upon which the prior prison term was based no longer constitutes a felony. The Attorney General disagrees. As we will explain, it is unnecessary and inappropriate for us to reach the merits of appellant's argument since his 2002 and 2004 violations of former Health and Safety Code section 11377, subdivision (a) have never been designated as misdemeanor convictions.

In *People v. Diaz* (2015) 238 Cal.App.4th 1323 (*Diaz*), the defendant challenged the validity of a prior prison term enhancement in light of Proposition 47, which had been

---

[3]   Incidentally, we note that Proposition 47 also added section 459.5 to the Penal Code, which "reduces certain second degree burglaries to misdemeanors by defining them as 'shoplifting,' that is, 'entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950).' (§ 459.5, subd. (a.).)." (*People v. Vargas* (2016) 243 Cal.App.4th 1416, 1419.) Appellant's arguments do not address this aspect of Proposition 47.

enacted subsequent to entry of the judgment from which he was appealing. The defendant's enhancement was based on a prison term served for petty theft with a prior theft conviction in violation of former section 666. Diaz argued that because his felony conviction for petty theft would have been a misdemeanor had the provisions of Proposition 47 been in effect at the time, the conviction and related prison sentence could not serve as the basis for a section 667.5, subdivision (b) enhancement in his current case. The Second District ruled that regardless of whether or not his interpretation of the law was correct, the defendant first had to file an application under section 1170.18, subdivision (f) to "redesignate" his prior theft offense as a misdemeanor. (*Diaz, supra*, at pp. 1331–1332.) The issue of how Proposition 47 might otherwise impact the applicability of section 667.5, subdivision (b) to his sentence was deemed "premature," and the judgment was affirmed. (*Diaz, supra*, at pp. 1328, 1331.)

Appellant, like the *Diaz* defendant, argues that redesignation of his qualifying prior convictions may be achieved on direct appeal. However, section 1170.18, subdivision (f) states: "A person who has completed his or her sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under this act had this act been in effect at the time of the offense, may file an application *before the trial court that entered the judgment of conviction* in his or her case to have the felony conviction or convictions designated as misdemeanors." (Italics added.) Accordingly, *Diaz* holds that "the voters did not intend to permit an appellate court to declare in the first instance that a felony conviction for a crime reduced by Proposition 47 is a misdemeanor." (*Diaz, supra*, 238 Cal.App.4th at p. 1332.) The same conclusion has been reached in other appellate decisions. (E.g., *People v. Contreras* (2015) 237 Cal.App.4th 868, 891–892; *People v. Shabazz* (2015) 237 Cal.App.4th 303, 314 ["Proposition 47 does not apply retroactively so as to permit us to modify the judgment and then direct that, upon remittitur issuance, [the] defendants' convictions be designated misdemeanors. [The d]efendant is limited to the statutory remedy set forth in

section 1170.18, subdivision (f).”].)  We therefore reject appellant's claim without prejudice to his ability to pursue remedies to which he may be entitled under Proposition 47 in the superior courts where any qualifying judgments of conviction were entered.

**Section 654**

Appellant challenges the trial court's failure to stay his sentence for count 4 on grounds that he committed burglary and robbery during the same course of conduct and pursuant to a single criminal objective.  The People counter that the evidence permits a finding of multiple objectives and, alternatively, argue the sentence was justified by the "multiple victim exception" to section 654.  We agree with appellant.

Background

The prosecution proceeded on a theory that appellant's commission of burglary was a continuing offense by virtue of his attempt to escape after exiting the store.  This is how it justified imposition of the section 12022 enhancement for use of a dangerous weapon, which would not have otherwise applied to count 4.  Upon conclusion of the bench trial, the trial court expressed its belief that the burglary count would be subject to section 654 and advised the parties to be prepared to discuss the issue at sentencing.  The probation department later recommended that the sentence for count 4 be stayed.  At the sentencing hearing, neither the trial court nor the parties addressed the applicability of section 654 to the burglary conviction.  A consecutive eight-month prison term was imposed for the offense without explanation by the trial court of its decision not to stay the sentence.

Analysis

Section 654 issues are reviewable on appeal regardless of whether any objections were made at the time of sentencing.  (*People v. Brents* (2012) 53 Cal.4th 599, 618.)  The statute prohibits multiple punishment for crimes arising out of a single act or indivisible course of conduct.  (§ 654, subd. (a); *People v. Hester* (2000) 22 Cal.4th 290, 294.)  The

8.

defendant's intent and objective determines whether two crimes are part of an indivisible course of conduct.  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective."  (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)  Such findings are upheld if supported by substantial evidence.  (*Ibid.*)

"Under section 459, burglary consists of an unlawful entry with the intent to commit a felony. Thus, the crime is *complete*, i.e., one may be prosecuted and held liable for burglary, upon entry with the requisite intent."  (*People v. Washington* (1996) 50 Cal.App.4th 568, 578–579.)  In certain contexts, e.g., for purposes of felony-murder liability, burglary is treated as a continuing offense during the perpetrator's escape from the scene of the crime and until he or she reaches a place of temporary safety.  (*People v. Bodely* (1995) 32 Cal.App.4th 311, 313–314.)  Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (§ 211.)  However, "a robbery can be accomplished even if the property was peacefully or duplicitously acquired, if force or fear was used to carry it away."  (*People v. Gomez* (2008) 43 Cal.4th 249, 256.)  This is commonly known as an "'*Estes* robber[y],'" referring to the holding in *People v. Estes* (1983) 147 Cal.App.3d 23, 26–28.  (*Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 223.)  Based on these principles, it appears the jury adopted the prosecution's theory of the case and considered appellant's acts of burglary and robbery to be part of one continuous transaction.

"Where the commission of one offense is merely "'a means toward the objective of the commission of the other,'" section 654 prohibits separate punishments for the two offenses."  (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1288.)  Viewing the record in the light most favorable to the judgment, we do not find substantial evidence to support an implied finding that the underlying burglary and robberies were committed in

furtherance of separate criminal objectives. The facts are similar to those in *People v. Le* (2006) 136 Cal.App.4th 925, which is cited and discussed in appellant's briefs. There, the defendant was convicted of second degree burglary and second degree robbery in connection with the theft of merchandise from a drugstore. The robbery conviction was based on the defendant's physical altercation with a store manager in a parking lot outside of the establishment as he was trying to flee the scene. (*Id*. at pp. 929–930.) The appellate court concluded that both offenses were the means of accomplishing the single intent of stealing merchandise and, therefore, consecutive sentencing on the burglary count violated section 654. (*People v. Le*, *supra*, at pp. 931–932.)

The People's reliance upon the multiple victim exception to section 654 is not persuasive. The judicially created exception permits separate punishment for each crime of violence against a different victim, even if such crimes are in furtherance of a single objective. (*People v. Palacios* (2007) 41 Cal.4th 720, 727; *People v. Felix* (2009) 172 Cal.App.4th 1618, 1630–1631.) However, as stated in *People v. Le*, "burglary does not constitute a crime of violence unless the defendant 'inflicted great bodily injury in the commission of the burglary.'" (*People v. Le*, *supra*, 136 Cal.App.4th at p. 932, quoting *People v. Centers* (1999) 73 Cal.App.4th 84, 99.) Here, the trial court expressly ruled that there was insufficient evidence to support a finding that appellant inflicted great bodily injury upon any of the victims.

There is case law that construes burglary as a crime of violence when the defendant is shown to have used a firearm in committing the offense. (*People v. Cardenas* (2015) 239 Cal.App.4th 220, 230.) "To preclude application of section 654, however, each of the crimes must have involved at least one different victim." (*Ibid*.) Even if we assume appellant's burglary was a violent crime, the victims of such violence were not different from those involved in the three robbery counts. Furthermore, the violence exception has not been extended to the use of weapons other than firearms in the absence of a great bodily injury finding. (See *People v. Islas*, *supra*, 210 Cal.App.4th at

10.

p. 130 ["Burglary is not a crime of violence unless the defendant inflicted great bodily injury in the commission of the burglary or personally used a firearm."].) For these reasons we conclude the trial court's failure to stay punishment for the burglary conviction violated section 654. Appellant shall be resentenced accordingly on remand.

**The People's Cross-appeal**

The People cross-appeal, alleging the trial court erred by granting appellant's *Romero* motion and declining to sentence him under the Three Strikes law. The appeal is well taken.

Background

The opposition to the *Romero* motion emphasized appellant's recidivist nature. Having received and reviewed the People's written opposition and the report of the probation department, the trial court was aware of the following information at the time of sentencing. Between the ages of 12 and 17, appellant suffered numerous juvenile adjudications for offenses that included burglary and grand theft from a person. He was in and out of youth facilities until he became a legal adult. In 1987, at the age of 20, appellant was convicted of first degree burglary and attempted first degree burglary, both serious felonies and strike offenses (§§ 667, subd. (a)(4), 1170.12, subd. (b)(1), 1192.7, subd. (c)(18), (39)). Another first degree burglary conviction followed in 1988, resulting in a six-year prison sentence. He was convicted of first degree burglary for a third time in 1992 and was sentenced to 14 years in prison.

In 2002, at the age of 34, appellant suffered a felony conviction for possession of a controlled substance. The punishment for this offense was four years in prison. He was convicted of felony possession of methamphetamine in 2004 and received a two-year prison sentence. In 2009, at the age of 42, appellant was convicted of being a felon in possession of ammunition and sentenced to another two years eight months in prison. In the midst of these convictions and incarcerations, he committed seven parole violations. Appellant was 44 years old and on parole when he committed the offenses in this case.

11.

The trial court granted the *Romeo* motion immediately prior to the pronouncement of sentence. Given the nature of the issues in this cross-appeal, we will reproduce here the bulk of the court's verbal ruling as reflected in the reporter's transcript:

"First, with all due respect to Mr. Bosco who is entitled to the dignity and respect that any human being has in this courtroom, I can find and I cannot articulate any basis that he merits personally any mitigation or to use a word by [defense counsel,] any leniency. [¶] … [¶] … His conduct in this courtroom at the best was rude. At the least showed a total contempt towards the jury system, of the jurors themselves, his own lawyer in front of the jury … he showed no remorse or no empathy or sympathy to the people whose property he admittedly he went in to steal. He showed no empathy or sympathy to those people who were in the lawful course of their jobs and the injuries that were inflicted or suffered I should say by one of those people that ended up with surgery and otherwise all because of Mr. Bosco's choices. [¶] … [¶]

"The reason this case is a significant one is that the integrity of the system and it's [*sic*] proper application at this juncture as it relates to Mr. Bosco is important. [¶] The Probation Department recommends that I sentence Mr. Bosco to prison for 57 years to life. Unless it's a typo the prosecutor in his response asks that I sentence Mr. Bosco to state prison for 97 years to life. Those are life sentences for Mr. Bosco. I don't know how old he is but he is probably in his mid-40's and I understand that. [¶] … [¶]

"Years ago [the] California State Supreme Court in this *Romero* decision held that Trial Court judges at this juncture had the right and in fact had an obligation to consider striking one or more prior strikes pursuant to Penal Code Section 1385. It set forth it and its legacy of cases thereafter have set forth those facts upon which a court can properly exercise that right[,] but just as importantly it set forth a series of factors that were not appropriate bases for courts to exercise that discretion. [¶] The most obvious ones continue to be the court considering[—]this is in the category of why a court cannot[—]are considerations of cost to the community or to the people for the imprisonment,

judicial economy in trying to resolve cases quickly, but those usually don't come up very often.  Quite frankly, the ones that do come up are the ones that a Judge finds and makes a statement that to impose the legislative intent in this case is simply too harsh.  And then a Judge substitutes his or her own judgment in the place for that of the [L]egislature[.] [T]hat I cannot do and I am not prepared to do today.  I understand what my role is, I understand the Three Strikes sentencing scheme.

"I understand that Mr. Bosco for the reasons that I have stated personally doesn't stand before this court with much mitigation on his side.  The mitigation in this case in my mind applies to the facts because whether the prosecutor wishes to see it this way, I will tell you what I saw.  I saw a man pretty much described accurately by [the prosecutor].  [¶] … He took the stand himself, raised his right hand in a way that can only be described as smug.  Said [he] had every intention of going into that store and steal[ing] from them.  He had that intent before he went in.  He took a backpack, he filled it with what I think has been described as toiletries and put some other matters in a cart and left.  That was his intent.  His intent was to steal about $30 worth of toiletries.  And that was all.  [¶]  And if that is all that would have happened Mr. Bosco would not be in the situation he is [in] today.  What happened was a series of unfortunate events.  And to say there was bad judgment exercised by a number of people is an understatement.  I don't want my comments to be interpreted as a belief that Mr. Bosco does not hold ultimate first and last responsibility for this because he does.  [¶]  But I recall a statement made by one of the witnesses and I believe it was the gentleman whose name I can't recall, but he was the one I will call the third man on the scene who ended up testifying that he stood on Mr. Bosco's wrist and that is how the knife in the hand was subdued.  He repeatedly looked at Mr. Bosco and referred to him by name.  I believe he knew Mr. Bosco.  I believe everybody in that store knew Mr. Bosco.  I believe Mr. Bosco may have shopped there often, but I think he probably stole there often and I say that because he was a particular person of interest the moment he walked in the store.

"They had him on store surveillance, they watched him and instead of asking him to return and then upon his failure to do so going back in and picking up the telephone and calling the police which they could have done easily, they took it upon themselves to play police. They jumped on Mr. Bosco. They were ready for it. I believe they wanted to do it. I believe that was what they were prepared to do and then all hell broke loose. [¶] I believe contrary to Mr. Bosco's testimony he did pull a knife[,] but that wasn't Mr. Bosco's intent when he went in there. His intent was to steal $30 worth of toiletries. Contrary to the prosecutor's comments I don't think somebody was going to get killed. [¶] Mr. Bosco, I think his only comment was[,] and I will leave the inappropriate words out, something to the effect, 'I am going to poke you' or 'do you want to get poked' or something else by the knife. He wanted space between him and them so he could continue leaving and running away with his $30 worth of stuff.

"There is a reason that law enforcement every where [*sic*] has changed their polices and [do] not pursue people in high speed chases down streets and freeways in what are otherwise low level crimes and that's because terrible things result which hugely outweigh the initial crime in the first place and they don't do that any more [*sic*]. And if the result is that somebody gets away with $30 worth of stuff then they get away with it, but nobody is going to risk driving 150 miles down the freeway or running into some one [*sic*] who is innocent.

"All these [victims] had to do, they know Mr. Bosco, they could have called the police. They could have said, 'Joe Bosco just stole, here is the video, go get him.' But they didn't. They jumped on him. Unfortunately – the first fellow to me is the lead Loss Prevention officer, he was the guy directing. The large fellow I call the second fellow was the person [who] positioned himself outside[,] the third fellow in the parking lot who the second guy who came later and stood on Mr. Bosco's wrist. The second fellow ended up falling or breaking his wrist or something. What a terrible consequence. Mr. Bosco didn't break it, he fell on it. And all this stuff snow balled [*sic*] because as [the

prosecutor] says Mr. Bosco doesn't care about anybody else. And to the people whose store it is who gets their stuff stolen regularly…. [¶] … [¶] … But [this] so-called *Estes* robbery was avoidable. [¶] … [¶]

"… I understand the law in terms of it's [*sic*] support and somebody saying that he had a right to retake their property. But in the context of this case where Mr. Bosco went in to steal $30 worth of toiletries and in exercising that right this crime becomes one[—]has one extraordinarily violent type of crime where somebody could have been killed I believe is inaccurate. Mr. Bosco waived [*sic*] that knife around so they would back off and I think he was on a bike. So he could get on his bike so he could pedal home and get away with this stuff so he wouldn't get caught and he wouldn't have to accept the consequences of his conduct. [¶] So I am not ignorant of the fact that he was convicted of three separate counts of [section] 211 with a record and I am not[—]but to characterize this as some type of heinous violent vicious crime I think would be disingenuous.

"I am prepared to strike Mr. Bosco's strikes for the following reasons specifically: [First], they are old in time. The most recent one is more than 20 years old from today's date. The crimes in this case were alleged to have been committed in 2012. So it is about 20 years before then. [¶] More specifically[,] in reviewing Mr. Bosco's prior conduct I didn't see any crimes of violence. They were theft and/or drug related. This was a penny ante theft crime which went awry. Mr. Bosco I don't believe had any intention to use a knife on anybody nor did he intend to go in there and to steal their property by use of a knife. The knife was either in his pocket hidden or I think the defense's theory is it somehow was in a sheath that was worn outside of his pants, I don't think that was ever established.

"But in trying to assess Mr. Bosco's risk to the community, the rationale behind the Three Strikes law and communities desiring to be protected from those people who are going to impose an increasing level of dangerousness, the proportionality argument is I believe applicable and I understand the legal argument made by the prosecutor. But to

15.

sentence some one [*sic*] in Mr. Bosco's shoes[—]and I say if he was just faceless and I will say this again, he individually merits no leniency or mitigation. [¶] Somebody who committed this type of crime with his record to be sentenced to 97 years to life I think is so wholly outside the bounds of the interest of justice as to not be supportable and it's for those [two] specific reasons that I am going to grant the motion by the [defense] to strike the strike."

After listening to the trial court's ruling, the prosecutor made a further record of its opposition. In the prosecution's view, the trial court had essentially blamed the victims for appellant's violent behavior. It further disputed the court's reliance on the remoteness in time of appellant's prior strikes, particularly because he had spent most of the interim period in prison. The prosecution also pointed out that appellant's willingness to resort to violence and his use of a deadly weapon in the current offenses were indicative of a present danger to society. The People renew these arguments on appeal.

Analysis

Section 1385 authorizes trial courts to strike prior felony conviction allegations in cases brought under the Three Strikes law if doing so will further the interests of justice. (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529–530.) A request for such relief is commonly known as a "*Romero* motion," even though defendants do not actually have a right to make motions under section 1385, subdivision (a). (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) The granting or denial of a *Romero* motion is reviewed for abuse of discretion on appeal. (*People v. Carmony*, *supra*, at p. 375.)

Although the standard of review is deferential, a trial court's power to dismiss prior strikes for purposes of sentencing is limited by statutory law and other various legal principles. (*People v. Strong* (2001) 87 Cal.App.4th 328, 336 (*Strong*).) Indeed, a primary purpose behind the enactment of the Three Strikes law was to restrict the discretion of trial courts when punishing recidivist offenders "'to ensure longer prison sentences and greater punishment for those who commit a felony and have been

16.

previously convicted of one or more serious and/or violent felony offenses.'" (*People v. Sasser* (2015) 61 Cal.4th 1, 11, quoting § 667, subd. (b); *People v. Garcia* (1999) 20 Cal.4th 490, 501.)  We must ultimately determine whether the trial court's ruling "'falls outside the bounds of reason' under the applicable law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162 (*Williams*).)

"If, after having suffered two qualifying felony convictions, an offender commits a third qualifying felony, the Three Strikes law presumes he or she is incorrigible and requires a life sentence." (*People v. Vargas* (2014) 59 Cal.4th 635, 638.)  "The typical third strike situation thus involves a criminal offender who commits a qualifying felony after having been afforded two previous chances to reform his or her antisocial behavior, hence the law's descriptive baseball-related phrase, "'Three Strikes and You're Out.'" [Citation]." (*Ibid.*)  In *Williams*, the California Supreme Court explained that when ruling on a *Romero* motion, a trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [spirit of the Three Strikes law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)  Only when the defendant can be said to fall outside the spirit of the law will the granting of a *Romero* motion be considered "'in furtherance of justice'" within the meaning of section 1385. (*Williams*, *supra*, at p. 161.)  An example would be a situation where a two-strike offender suffered his prior convictions in the same proceeding for strike offenses that arose from a single act committed against a single victim. (*People v. Vargas*, *supra*, at pp. 638–639.)  Such circumstances are not necessarily indicative of a recidivist nature or inability to reform, and would allow the defendant to be considered outside the spirit of the sentencing scheme.

In *Strong*, the Third District was asked to decide whether a "*career criminal*" can be considered outside the spirit of the Three Strikes law so as to justify the dismissal of a prior strike at sentencing. (*Strong*, *supra*, 87 Cal.App.4th at p. 331.) The appellate court's answer was yes, in theory, but such instances will be rare because, as a practical matter, "longer sentences for career criminals who commit at least one serious or violent felony certainly goes to the heart of the statute's purpose—or spirit." (*Id*. at p. 338.) The key holding of the case is as follows: "extraordinary must the circumstance be by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack." (*Ibid*.) In other words, habitual offenders should be deemed outside the spirit of the Three Strikes law "only in extraordinary circumstances." (*Strong*, *supra*, at p. 347.)

The defendant in *Strong* had suffered only one prior strike conviction, but the trial court was found to have abused its discretion by dismissing the strike in light of the defendant's 22-year criminal history. (*Strong*, *supra*, 87 Cal.App.4th at p. 331.) The California Supreme Court has observed that extraordinary circumstances must exist for a defendant with *two* prior strike convictions to be found outside the spirit of the Three Strikes law, and that such cases fall into a "rare category." (*People v. Vargas*, *supra*, 59 Cal.4th at pp. 641–642.) For a career criminal with two strike priors to obtain relief on a *Romero* motion, the facts must "demonstrate that no reasonable person would disagree that [the] defendant fell outside the spirit of the Three Strikes law." (*People v. Vargas*, *supra*, at p. 642.) With these principles in mind, we turn to the ruling in this case.

The trial court committed legal error by basing its decision on the age of appellant's prior strikes. The Three Strikes law explicitly states that "[t]he length of time between the prior serious and/or violent felony conviction and the current felony conviction shall not affect the imposition of sentence." (§§ 667, subd. (c)(3), 1170.12, subd. (a)(3).) Furthermore, any potential relevance the remoteness of the prior strike

18.

convictions could have had was vitiated by the length of time he spent incarcerated between 1987 and 2012. (See *People v. Pearson* (2008) 165 Cal.App.4th 740, 749 [rejecting argument that prior strikes should have been dismissed because they were remote where the current offense was violent, the defendant's criminal history spanned 25 years, and he had performed poorly on probation and parole]; *Strong*, *supra*, 87 Cal.App.4th at p. 346 [same]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [remoteness of prior strikes "not significant" in view of the defendant's lengthy criminal history].)

It was also improper for the trial court to base its ruling on the fact that appellant's criminal history did not involve violent offenses. The Three Strikes law is implicated when the defendant is shown to have prior violent felony convictions *or* prior serious felony convictions. To the extent the two categories of offenses do not overlap, they are treated with equal weight under the statutory scheme. Recent changes in the law provide relief for defendants whose third strike is not a serious or violent felony (see §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C)), but that was not the case here. Robbery of any kind is a violent felony by legal definition. (§ 667.5, subd. (c)(9).) Robbery is also considered a serious felony. (§ 1192.7, subd. (c)(19).)

Under the controlling case law, the nature and circumstances of the present felonies and appellant's background, character, and prospects do not permit a finding that he falls outside the spirit of the Three Strikes law. On the contrary, his continuous pattern of criminality and recidivism show him to be exactly the type of individual contemplated by the statutory scheme. If anything, the current offenses reinforce the presumption of incorrigibility and demonstrate a troubling willingness to use weapons and violence to achieve criminal objectives. The trial court's "proportionality" analysis was essentially a determination that the punishment mandated by the Three Strikes law did not fit the crimes for which appellant was convicted. Its sentencing decision cannot be upheld on those grounds. For the reasons we have discussed, the trial court exceeded

the bounds of its discretionary authority by dismissing the prior strike convictions. Appellant must be resentenced under the Three Strikes law on remand.

## **DISPOSITION**

The judgment is reversed as to the sentence and remanded for resentencing in accordance with the views expressed in this opinion. In all other respects, the judgment is affirmed.

_____
KANE, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
POOCHIGIAN, J.

20.