Filed 6/11/24  P. v. Page CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAVID MARVEL PAGE,<br><br>        Defendant and Appellant. | B330517<br><br>(Los Angeles County<br>Super. Ct. No. BA489166) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David Madeo and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

David Marvel Page appeals from a judgment entered after he was convicted of voluntary manslaughter and possession of a firearm by a felon.  At sentencing, the trial court denied Page's motion to strike a prior strike conviction for armed robbery and imposed the upper term on his manslaughter count.  Page contends the court abused its discretion in denying his motion and imposing the upper term sentence.  We conclude the trial court did not abuse its discretion in denying Page's motion to strike, Page forfeited his challenges to the manslaughter sentence because he did not raise them before the trial court, and, in any event, his forfeited challenges fail on the merits.  Thus, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Page's Crimes*

In June 2020, Page shot and killed Michael Smith.[1]  At the time, Page was on probation after a conviction for possession of cocaine base for sale in 2018.  He was in his early 40s and living in a van in Los Angeles.

Page grew up in the same area and joined a neighborhood Crip gang when he was 14 years old.  In 1996, when he was 18 years old, Page committed a robbery by walking up to a car with a gun and threatening to kill an occupant if Page was not

---

[1]     The following facts regarding Page's background and his shooting of Smith are primarily drawn from Page's trial testimony.

given money.  Page ended up serving an extra three years because he was found with a weapon in prison.  After his release, Page went back to prison twice for possessing a gun in violation of his parole.

Once he was released from prison in 2010, Page worked as a commercial painter and had a child.  By June 2020, however, Page was unemployed, using PCP daily, and no longer in touch with his child or the child's mother.  A few months before, Page obtained a gun after a close friend was shot and killed in the area.  Page knew he was not allowed to have a gun because of his prior felony conviction.

Page had a previous run-in with Smith before he killed him.  Namely, two days earlier, Smith approached Page's van and started talking to Page's two female friends who were inside.  The friends tried to ignore Smith, but he was persistent.  When Page got out of the van, Smith gave him a "very evil look" that suggested he was going to get in the van whether Page wanted him in there or not.  After Smith got into the van, Page positioned himself to be able to grab his gun if necessary.  Smith got out of the van after Page yelled at him to do so.  Page found Smith aggressive and his size intimidating.

On the night of the shooting, Page was in his van when he recognized Smith drive up on the wrong side of the road with his high beams shining into the van.  Page felt alarmed.  Smith drove up close to Page and looked at him before driving off.  Page sensed he was in trouble when shortly thereafter Smith returned and parked right behind his van.  Fearing he would be trapped inside the van and shot, Page grabbed his gun and got out of the van.  Smith got out of his own vehicle, talked to some people in the car in front of Page's van, and then looked into the van and at

Page. Smith then went to his vehicle, grabbed "something," and started walking toward Page. Believing Smith was going to kill him, Page shot at Smith's chest when Smith was about three feet away. Smith dropped to his knees and reached under his shirt. Page believed Smith was going for a gun and kept firing at him until he could walk around Smith and to his van. Page fled the scene and later destroyed the gun.

Responding officers found Smith unresponsive on the ground. He appeared to have been shot in the face and was lying near a face mask that had a bullet hole and blood on it. Smith was transported to a hospital but died soon after. An autopsy showed Smith was shot eight times, including while his back was turned and while he was on the ground. No gun was found on Smith or in his vehicle.

After Page was arrested, he told an informant who was part of a *Perkins* operation[2] that the gun was gone and any witnesses would not cooperate with law enforcement.

B.     *Page's Prosecution and Trial*

The People charged Page with one count of murder (Pen. Code, § 187, subd. (a)),[3] and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)). The People alleged Page committed the murder while personally using a firearm within the meaning of section 12022.5, subdivision (a). The People also alleged Page had a prior serious or violent felony conviction

_____

[2]     In a *Perkins* operation, an undercover operative, who the suspect does not know is a police agent, is placed in a cell with the suspect. (*Illinois v. Perkins* (1990) 496 U.S. 292, 294.)

[3]     Statutory references are to the Penal Code.

4

within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12).

In January 2023, Page pleaded no contest to the count of possession of a firearm by a felon. During a trial on the murder charge, Page testified he acted in self-defense because he believed Smith was going to kill him. The jury found him guilty of the lesser included offense of voluntary manslaughter (§ 192, subd. (a)), and found true the allegation that he personally used a firearm to commit the offense.

## C.   *Page's Sentencing*

In a bifurcated proceeding, Page admitted the prior strike allegation—based on the 1996 robbery conviction—but moved the court to strike the allegation under section 1385. The court denied Page's motion.

Before sentencing Page, the court allowed him to present testimony from Dr. Michelle Adams, a clinical psychologist with the Department of Corrections and Rehabilitation. Adams testified about Page's previous diagnosis of post-traumatic stress disorder (PTSD) and her opinion that that diagnosis was accurate in light of her conversations with Page and review of his records. Adams further testified to her opinion that Page had experienced psychological, physical, and childhood traumas that contributed to his manslaughter offense.

After receiving this evidence, the court found two of the seven alleged aggravating circumstances applied:  namely, that Page had served a prior term in prison or county jail (Cal. Rules of Court, rule 4.421(b)(3)) and that Page was on probation when he committed the crimes (Cal. Rules of Court, rule 4.421(b)(4)). The court reviewed Page's PTSD evidence, explaining it "may

have had a bearing on his unreasonable belief in self-defense" that led to the jury's manslaughter verdict. But, the court explained, "any unreasonable belief in self-defense could no longer exist, under any circumstances, once that victim is down and out and [Page] continued to shoot him." To that end, the court found the aggravating circumstances outweighed any mitigative effect of the PTSD.

The court sentenced Page to 26 years in state prison based on the upper term of 11 years for the voluntary manslaughter count, doubled for the prior strike, plus the middle term of four years for the firearm enhancement. The court also imposed a four-year concurrent sentence for the count of possession of a firearm by a felon based on the middle term of two years, doubled for the prior strike.

Page timely appealed.

## DISCUSSION

Page argues the trial court abused its discretion both in denying his motion to strike the prior strike allegation, and in imposing the upper term for his voluntary manslaughter conviction. We consider these challenges in turn.

A. *Page's Motion To Strike the Prior Strike Allegation*

1. *Applicable law*

A court has discretion under section 1385, subdivision (a), to strike an allegation of a prior strike conviction "in the furtherance of justice." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530; see *People v. Clancey* (2013) 56 Cal.4th 562, 582 [three strikes law does "not restrict the power of a trial court

6

acting on its own motion to dismiss a prior felony conviction allegation in the furtherance of justice"].) In exercising this discretion, the court may not strike a prior conviction "solely for judicial convenience, in exchange for a guilty plea, or based on antipathy to the Three Strikes law." (*People v. Johnson* (2015) 61 Cal.4th 674, 688.) Rather, the court "must look to 'factors intrinsic to the [Three Strikes] scheme.' [Citation.] It 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*Id.* at pp. 688-689.)

We review the trial court's refusal to strike a prior conviction under section 1385 for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374.) The party appealing the sentence has the burden to clearly show the trial court's decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377; see also *People v. Williams* (1998) 17 Cal.4th 148, 162 [the abuse of discretion standard "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts"].)

> 2.     *The trial court did not abuse its discretion in denying Page's motion to strike*

Page asserts the trial court abused its discretion by focusing on the nature of his manslaughter offense and not giving "nuanced consideration" to the remoteness of his prior strike, his

7

youth at the time of that offense, his PTSD, and his family support and work history since his release from prison in 2010. He further asserts the court was motivated to impose a harsher sentence based on its personal disagreement with the jury's verdict.

We find the trial court's ruling to be far more considered than this argument suggests. The court first explained its decision was based on Page's criminal history, the facts of the present case, and Page's prospects for the future in relation to the spirit of the three strikes law. The court next acknowledged the age of Page's 1996 strike conviction before noting that Page had been convicted of four other felonies—in 1999, 2005, 2008, and 2018—between that strike and the current offense. Although not the worst it had seen, the court explained Page had a "fairly significant criminal history," and that he "would be in a lot better position if he had no convictions since he committed the robbery in 1996." The court then described the present case as "particularly egregious," emphasizing that Page continued to shoot the victim after he had fallen. The court stated again that Page "would be in a lot better position if he had just shot the victim once or twice once the victim went down," but that instead Page "continued to shoot [the victim]," including several shots in the back. The court concluded these facts established Page did not fall outside the spirit of the three strikes law and denied his motion.

This more complete picture shows the trial court did not abuse its discretion in denying Page's motion to strike his prior conviction. Even though that conviction was 26 years old, it was not remote when considered in the context of Page's overall criminal record. (See *People v. Williams*, *supra*, 17 Cal.4th at

8

pp. 162-164 [abuse of discretion to strike a 13-year-old strike where there was little or nothing favorable in the defendant's background, record, character, or prospects]; *People v. Pearson* (2008) 165 Cal.App.4th 740, 749 ["argument that [prior] convictions are remote in time is without merit where, as here, the defendant has led a continuous life of crime"]; *People v. Philpot* (2004) 122 Cal.App.4th 893, 906-907 ["Although defendant points out his personal background and the remoteness of his priors, the court could not overlook the fact defendant consistently committed criminal offenses for the past 20 years"]; *People v. Strong* (2001) 87 Cal.App.4th 328, 338 ["the overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike of those defendants with a long and continuous criminal career"]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 320 [abuse of discretion to strike a 17-year-old strike in light of the defendant's "unrelenting record of recidivism, even while on parole or probation from previous felony convictions"]; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [abuse of discretion in striking 20-year-old strike where defendant had "led a continuous life of crime after the prior"].) The trial court denied Page's motion without expressly addressing the evidence showing he suffered from PTSD as a result of past traumas. But it did so after receiving that evidence and related argument at the sentencing hearing, and before explaining later at the hearing that neither Page's mental health nor his negative childhood mitigated his "egregious conduct" of shooting the victim eight times, including after the victim had fallen. In other words, there is no evidence the court disregarded Page's PTSD evidence within its consideration of his present offenses.

In sum, the court denied Page's motion after recognizing its discretion, considering the relevant factual circumstances, and making findings supported by the record.  Thus, Page has not met his burden of demonstrating the court's decision was "so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

### B.  *Page's Upper Term Sentence for Voluntary Manslaughter*

#### 1.  *Applicable law*

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) amended section 1170, subdivision (b).  (Stats. 2021, ch. 731, § 1.3.)  Before this amendment, the trial court had discretion to choose which of the three terms of imprisonment specified for an offense best served the interests of justice.  (§ 1170, former subd. (b).)  Section 1170, subdivision (b), now makes the middle term the presumptive sentence and states the court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(1)-(2).)

In addition, under amended section 1170, the lower term shall be the presumptive sentence where a defendant "has experienced psychological, physical, or childhood trauma" and that trauma "was a contributing factor in the commission of the offense."  (§ 1170, subd. (b)(6)(A); see *People v. Hilburn* (2023)

93 Cal.App.5th 189, 200.)  When the presumption applies, the court must impose the lower term unless it "'finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice.'"  (§ 1170, subd. (b)(6); see Cal. Rules of Court, rule 4.420(e)(1).)

We review a sentencing decision under section 1170 for an abuse of discretion.  (*People v. Hilburn*, *supra*, 93 Cal.App.5th at pp. 205-206.)  "That 'discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest."'"  (*Id.* at p. 206, quoting *People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

### 2. *Page forfeited his challenges to the trial court's imposition of the upper term*

Page argues the trial court abused its discretion by imposing the upper term of 11 years for his manslaughter conviction.  He asserts the trial court improperly considered aggravating circumstances based on his crime being one of great violence (Cal. Rules of Court, rule 4.421(a)(1)) and his use of a gun during that crime (Cal. Rules of Court, rule 4.421(a)(2)). Page asserts these facts could not be used to impose an upper term because they were also used to support his conviction and gun enhancement.

A court "generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence."  (*People v. Scott* (1994)

9 Cal.4th 331, 350.) Even so, Page forfeited this argument by not objecting to the trial court's purported dual use of facts at sentencing. (See *id.* at p. 353 [forfeiture shall apply to claims involving the court's failure to properly make or articulate its discretionary sentencing choices, including "cases in which the court purportedly erred because it double-counted a particular sentencing factor"]; see also *People v. Gonzalez* (2003) 31 Cal.4th 745, 755 [failure to object to the court's dual use of facts forfeited the issue on appeal].)

Page also forfeited his arguments that the applicable aggravating circumstances did not warrant an upper term and that the trial court relied on a personal agenda to punish him based on its disagreement with the jury verdict. Both of these arguments boil down to whether the court properly weighed factors or provided a valid reason for its decision. By not raising these challenges at sentencing, Page forfeited the ability to raise them on appeal. (See *People v. Scott*, *supra*, 9 Cal.4th at p. 353 [forfeiture applies without a contemporaneous objection in "cases in which the court purportedly erred because it . . . misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons"].)

> 3. *Page's challenges to his manslaughter sentence also fail on the merits*

Even if we consider these separate challenges on the merits, there is no abuse of discretion on which to disturb the trial court's decision.

First, the record does not show an improper dual use of aggravating circumstances. At sentencing, the court found two of the seven alleged aggravating circumstances applied, and

explained why the other five did not. As part of this explanation, the court stated the aggravating circumstances for a crime of great violence and use of a firearm could not apply because they were bases for Page's manslaughter conviction and gun enhancement. The court later corrected the prosecutor's statement that the aggravating circumstance for a crime of great violence applied, explaining again that Page's manslaughter was necessarily a violent crime. While the court referred to the nature of the offense in imposing the upper term, it did so not to apply additional aggravating circumstances but rather to explain the limited scope of the mitigating circumstance that Page alleged based on his PTSD diagnosis. The court then found the applicable aggravating circumstances outweighed that mitigating circumstance.

Second, Page claims the applicable aggravating circumstances—that he had served prison time and was on probation when he committed manslaughter—were not "so egregious" to justify an upper term. But he offers no argument to support that claim, and fails to provide any authority establishing the trial court abused its discretion by considering circumstances his trial counsel agreed applied. Those circumstances align with the court's findings regarding Page's "fairly significant criminal history." The court's determination that they also justified imposing the upper term for Page's manslaughter conviction was within its discretion under section 1170.

Finally, nothing in the record supports Page's assertion that the trial court relied on a "personal agenda" of punishing him out of disagreement with the jury's verdict. The court's statement that everyone had to "accept" the jury found Page

13

guilty of manslaughter based on his theory of self-defense was a statement of fact, not evidence of improper bias.

In sum, the trial court properly exercised its discretion by considering the mitigating evidence and determining the applicable aggravating circumstances outweighed such evidence. (See *People v. Carmony*, *supra*, 33 Cal.4th at p. 379 [in absence of an abuse of discretion, appellate courts may not substitute their own judgment for that of the trial court].)

## DISPOSITION

The judgment is affirmed.

RAPHAEL, J.*

We concur:

SEGAL, Acting P. J.

FEUER, J.

---

*        Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.